[No. D044792. Fourth Dist., Div. One. Jan. 13, 2006.]

BEN CHARLES CHRISTIE, Plaintiff and Respondent, v.
THE CITY OF EL CENTRO et al., Defendants and Appellants.

768

COUNSEL

McCormick & Mitchell, John P. McCormick and Deborah K. Garvin for Defendants and Appellants.

Singleton and Associates and Terry Singleton for Plaintiff and Respondent.

OPINION

NARES, J.—In this action for false arrest and wrongful imprisonment brought by Ben Charles Christie, the court set aside a nonsuit and dismissal in favor of the City of El Centro, the El Centro Police Department, and El Centro Police Officers Ray Bonillas and Efran Coronel (collectively, the City). The court granted a new trial for "irregularity of the proceedings" because the judge who granted nonsuit, the Honorable Barrett Foerster, had discussed the case with a previously disqualified judge, the Honorable Jeffrey Jones. The court found Judge Foerster disqualified to rule on the nonsuit motion as a result of the discussion, and the resulting dismissal was set aside as void.

On appeal, the City asserts (1) there was no legal or factual basis for granting the motion for new trial based upon irregularity in the proceedings, and (2) there was no showing of prejudice or denial of a fair trial to Christie sufficient to support a new trial.

We conclude that (1) because Judge Foerster was disqualified at the time he granted the City's motion for nonsuit, that ruling was void and must be vacated regardless of a showing of prejudice; and (2) even if a showing of prejudice or denial of a fair trial were necessary, that showing has been met by Christie. Accordingly, we affirm the order granting a new trial and remand the matter for a new trial on Christie's claims.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

### A. *Facts Underlying Christie's Claim*

On November 23, 1999, Stephanie Hernandez, the wife of an El Centro police officer, stopped her pickup truck in a lane of travel in the parking lot at a Costco in El Centro, California. Hernandez was waiting for the closest parking space to the store in that row to become available. Christie entered the same lane. He stopped his truck behind two smaller cars that were waiting behind Hernandez's pickup. While he was waiting, the two smaller vehicles between himself and Hernandez passed her vehicle to the right. Christie asserts that he then tried to drive his vehicle around Hernandez's vehicle on the right side and at that point his truck slightly contacted her bumper on the right side. He also contends that the impact was so slight that her vehicle did not move and no damage resulted to either vehicle.

Christie then honked his horn to try to get her to move, but Hernandez remained stopped in front of him. He exited his truck and went up to her vehicle to request her to move. However, she rolled up her windows, turned her back to him and began talking on her cell phone. Christie went back to his car and waited, along with other vehicles behind him, until a couple came out of the store with their groceries, loaded them into the vehicle parked in the first space and left. Hernandez pulled into the vacated space and parked. According to Christie, he waited close to 20 minutes before the first space opened up and Hernandez parked her vehicle. Christie then proceeded to the tire shop to have a tire fixed and went into the Costco to do some shopping.

In the meantime, Hernandez called the El Centro Police Department. She identified herself as "352sA," shorthand for police officer No. 352's wife. She

---

[1] Because this is an appeal from a grant of new trial, and we do not have the transcripts from the underlying trial, much of the factual background has been taken from the statement of facts in Christie's motion for new trial. However, we have not included any facts disputed by the City.

also gave police a description of Christie's vehicle, its colors, and its license plate number, described where it was parked, and indicated where she would be waiting for them. Hernandez told police that Christie had rammed her car several times with increasing force. According to Hernandez, Christie then approached her vehicle in a threatening manner, and she was afraid for herself as well as the safety of her children and niece and nephew, who were also in the truck. Officers Coronel and Bonillas arrived at the scene and took her statement, which again related the ramming incident and her fear.

When Officers Coronel and Bonillas arrived at the Costco, Christie was inside shopping, and Hernandez was waiting outside. As Christie was shopping, he was approached by Officer Bonillas who told him he needed to talk to him about the incident where he "rammed a woman three times." Christie told Officer Bonillas that there had been no ramming and that he had only accidentally contacted Hernandez's bumper once, and there was no damage to her vehicle. Officer Bonillas then escorted Christie out of the store.

Christie watched as the police officers conversed with Hernandez in Spanish. According to Hernandez, she told the officers that her truck was at first tapped by Christie as he tried to get around her. However, he then backed up directly behind her and rammed her truck hard three times with his truck. Hernandez claimed that the force of the impacts was so strong that they made her vehicle rock and she feared for her life and the lives of her passengers.

Mr. Armistead, a passenger in Christie's vehicle, was interviewed by Officer Bonillas. He told Officer Bonillas that the vehicles' bumpers touched only once and it was accidental. He also confirmed that Hernandez had blocked the lane of travel and they had been unable to pass her.

Both Hernandez's and Christie's trucks had chrome bumpers that were in perfect condition before the incident. Officer Bonillas examined Hernandez's vehicle and claimed he found an area where dust had been disturbed. He took photographs of the bumper. Officer Bonillas also interviewed another passenger in Christie's car, Bobby Camp. Officer Coronel prepared a police report of the incident, wherein he stated that Christie and his passengers had all confessed to Christie's purposefully striking Hernandez's vehicle. Officer Coronel interviewed the 10-year-old niece and 14-year-old nephew of Hernandez, who were passengers in her vehicle. However, according to Christie, none of their statements were recorded in the police report. According to Christie, both of these witnesses stated when interviewed that they did not see, feel or hear anyone ramming Hernandez's vehicle.

Christie was arrested and taken to jail. He was strip searched, and remained in jail for six days. According to Christie, because of his incarceration, he was unable to attend the planned grand opening of his restaurant in San Felipe, Baja California, on Thanksgiving Day.

### B. The Criminal Trial

At Christie's arraignment, he was offered a plea bargain to reduce the charges to disturbing the peace, a misdemeanor. Christie refused the plea offer and went to trial on charges of assault with a deadly weapon, assault, and reckless driving. At trial, Officer Coronel testified that the prosecutor sent him to interview the two witness passengers in Hernandez's vehicle. He conducted the interview but never gave a report to the prosecutor. The pictures police took of Hernandez's bumper were not produced at trial. Officers Coronel and Bonilla testified at trial that Christie and his passenger Armistead both admitted that Christie had intentionally struck Hernandez's vehicle. Officer Bonillas testified that he had located disturbed dust in the center of Hernandez's bumper.

After presentation of the evidence, the jury deliberated for approximately one hour, and then acquitted Christie of all charges.

### C. The Civil Suit and Trial

In November 2000 Christie filed this action against the City, asserting causes of action for assault and battery, false arrest, false imprisonment, malicious prosecution, violation of civil rights, conspiracy, negligence, and infliction of emotional distress, and his wife Joan filed a claim for loss of consortium. On November 22, 2000, Christie filed a peremptory challenge to the first judge assigned to the matter, Judge Jones.

The matter went to trial before Judge Foerster in March 2004. At the conclusion of the presentation of evidence in the case, Judge Foerster granted the City's motion for nonsuit, finding that Hernandez's report to police provided probable cause for the arrest, thereby barring all of Christie's causes of action as a matter of law. On April 7, 2004, the court filed a formal order dismissing Christie's action with prejudice.

### D. The Motion for New Trial

On April 26, 2004, Christie filed a motion for new trial, asserting that the court erred in granting the motion for nonsuit because his evidence, viewed in its most favorable light, demonstrated (1) a prima facie case of a violation of his federal constitutional rights; (2) the City had not met its burden of

proving probable cause; and (3) he was entitled to a jury trial on his malicious prosecution claim even if the officers had probable cause for the initial arrest. The hearing on the motion for new trial was held on May 17, 2004.

During the hearing on the new trial motion, counsel for Christie told Judge Foerster that he was informed and believed that Judge Foerster had consulted with Judge Jones prior to granting the motion for nonsuit and that Christie had previously filed a peremptory challenge against Judge Jones. Counsel argued that if that occurred, the motion for new trial should be granted on that basis as well.

The court did not respond to this information on the record. However, after taking the motion for new trial under submission, Judge Foerster issued a written disclosure wherein he acknowledged that Judge Jones had been disqualified and that he had spoken with him concerning "the law and procedures that might be applicable to [the] matter." He further stated that he was not aware of the disqualification when he spoke to Judge Jones, and neither was Judge Jones. Judge Foerster also stated, "Judge Jones did not advise me as to how this case should be decided. In arriving at my decision in granting the motion for nonsuit, I relied on my own legal research and analysis. Therefore, my recusal is not necessary or appropriate."

On that same date, Judge Jones sent a letter to counsel confirming the conversation with Judge Foerster and stating that he did not indicate to Judge Foerster how he should rule on the motion for nonsuit. He also disclosed a second conversation with Judge Foerster before the hearing on the motion for new trial. According to Judge Jones, the only subject discussed at that meeting was scheduling a court reporter to cover the motion for new trial due to a shortage of court reporters at the El Centro courthouse. Judge Foerster sent a letter to counsel the next day indicating that Judge Jones's recollections concerning the subject matter of their conversations were "generally consistent with my own."

### E. *Challenge for Cause*

Christie filed a challenge for cause against Judge Foerster. Christie stated in the challenge that the communication between Judge Foerster and Judge Jones concerning the case was inappropriate because of Judge Jones's previous disqualification and because it immediately preceded and concerned the pending motion for nonsuit. Christie asserted that Judge Foerster was disqualified as of the time of the first communication with Judge Jones and also that he was biased against Christie's case.

In response to the challenge, Judge Foerster filed an answer reciting the contacts with Judge Jones and again asserting that Judge Jones had not

opined as to how he should rule on the matter. He also indicated that his first conversation with Judge Jones occurred immediately prior to his grant of the motion for nonsuit.

### F. Ruling on Challenge for Cause

The challenge for cause was assigned by the Judicial Council to the Honorable Christopher J. Warner, a judge of the Superior Court of San Bernardino County. Judge Warner issued a written order, finding that Judge Foerster was disqualified in the matter. Judge Warner first found that the allegations of actual bias were unsupported and amounted to nothing more than Christie's disagreement with Judge Foerster's rulings in the matter. However, Judge Warner found that Judge Foerster was disqualified because of his communications with Judge Jones, under Code of Civil Procedure former section 170.1, subdivision (a)(6)(C)[2] because "a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial." Judge Warner found that Judge Foerster was charged with knowledge of the previous disqualification of Judge Jones because it was in the court file and that, because of the disqualification of Judge Jones, the consultations created an "appearance of impropriety." Judge Warner stated, "The appearance of impropriety is patent. A judge should simply not speak with another judge about a case in which the latter has been disqualified. Such conduct, no matter how innocent and well intentioned, can only undermine public confidence in the integrity and impartiality of the judiciary." Judge Warner did not find any "malice or evil motive associated with the contacts between the two judges, but rather that the communications were the result of unfortunate error in failing to be aware of the previously filed [peremptory] challenge." Nevertheless, Judge Warner found that "a reasonable person aware of the facts would entertain a doubt as to the propriety of Judge Foerster's actions in communicating with Judge Jones and might reasonably entertain a doubt that Judge Foerster would be able to be impartial . . . ."

Judge Warner also gave notice to the parties that the question of disqualification was not an appealable order and that it could be reviewed only by a petition for writ of mandate within 10 days of notice to the parties of the decision. The City did not file a petition for writ of mandate challenging the disqualification of Judge Foerster.

### G. Hearing on Motion for New Trial Before New Judge

Following the disqualification order, the case was reassigned to Judge Donnelly for a hearing on Christie's motion for new trial, now based upon

---

[2] All further statutory references are to the Code of Civil Procedure.

both an alleged error of law, and irregularity in the proceedings based upon the disqualification of Judge Foerster at the time he granted the City's motion for nonsuit. The court granted Christie's motion for new trial based upon "irregularity in the proceedings of the court." Judge Donnelly found that Judge Warner had found a violation of canon 2(A) of the California Code of Judicial Ethics in ordering Judge Foerster disqualified, and that such violations "have been held to constitute prejudicial irregularity in the proceedings." Elaborating, Judge Donnelly stated: "In effect, a disqualified judge made a dispositive ruling against the plaintiff. That alone is an irregularity justifying a new trial. The plaintiff also challenges the fairness of [the] hearing. Just as the appearance of impropriety has been found to be patent; unfortunately, the taint of an appearance of unfairness is palpable. Under these circumstances, there are reasonable grounds to conclude that the disqualifying communications between judges, and the resulting appearance of impropriety, did materially and prejudicially affect the plaintiff's right to a fair and impartial hearing and trial. [¶] The plaintiff's motion for new trial on the ground of irregularity in the proceedings is granted in full. The court denies plaintiff's motion for new trial on the ground of error of law relating to the 'probable cause' issue in the motion for nonsuit."

This timely appeal follows.

## DISCUSSION

### A. *City's Challenge to Disqualification Order*

■ In support of their appeal asserting the court erred in granting a new trial, the City challenges the finding by Judge Warner that there was an "appearance of impropriety" sufficient to render Judge Foerster disqualified. However, "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding." (Former § 170.3, subd. (d).) This applies to both motions granting and denying a motion to disqualify, and to both peremptory challenges and challenges for cause. (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 194–195 [23 Cal.Rptr.2d 482].)

It is undisputed that the City did not file a petition for writ of mandate with this court and therefore the contention that Judge Warner did not have adequate grounds to find that there was an appearance of impropriety justifying the disqualification of Judge Foerster is not reviewable on appeal.

B. *Effect of Disqualification on Grant of Nonsuit and Dismissal*

■ The City contends that Judge Donnelly erred in granting a new trial because there was no actual prejudice or a denial of a fair trial as a result of Judge Foerster's actions. We conclude that because Judge Foerster was disqualified at the time he granted the City's motion for nonsuit, that ruling was null and void and must be vacated regardless of a showing of prejudice. We further conclude that even if a showing of prejudice or denial of a fair trial were necessary, that showing has been met. As Judge Warner found, Judge Foerster's conversation about the City's motion for nonsuit with Judge Jones, who had previously been disqualified in the matter, immediately prior to Judge Foerster's ruling on that motion, gave rise to a doubt as to whether Judge Foerster would be impartial in ruling on the motion.

Former section 170.1, subdivision (a)(6) (section 170.1(a)(6)) provided in part: "(a) A judge shall be disqualified if any one or more of the following is true: [¶] . . . [¶] (6) For any reason (A) the judge believes his or her recusal would further the interests of justice, (B) the judge believes there is a substantial doubt as to his or her capacity to be impartial, or (C) *a person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial.*" (Italics added.)

■ The standard for disqualification is fundamentally an objective one and not limited to actual bias. (*United Farm Workers of America v. Superior Court* (1985) 170 Cal.App.3d 97, 104 [216 Cal.Rptr. 4].) Disqualification is mandated if a reasonable person would entertain doubts concerning the judge's impartiality. (*Ibid.*) Except in very limited circumstances not applicable here, a disqualified judge has no power to act in any proceedings after his or her disqualification. (Former § 170.4.)

The City asserts that the grant of nonsuit need not be overturned because Judge Foerster was not disqualified until later, when Judge Warner granted Christie's motion to disqualify. However, disqualification occurs when the facts creating disqualification arise, not when disqualification is established. (*Tatum v. Southern Pacific Co.* (1967) 250 Cal.App.2d 40, 43 [58 Cal.Rptr. 238] (*Tatum*); see also *Urias v. Harris Farms, Inc.* (1991) 234 Cal.App.3d 415, 422–427 [285 Cal.Rptr. 659] (*Urias*).) The acts of a judge subject to disqualification are void or, according to some authorities, voidable. (*Giometti v. Etienne* (1934) 219 Cal. 687, 688–689 [28 P.2d 913] (*Giometti*); *Urias, supra,* 234 Cal.App.3d at p. 424; *Betz v. Pankow* (1993) 16 Cal.App.4th 931, 939–940 [20 Cal.Rptr.2d 841] (*Betz*).) Relief is available to a party who, with due diligence, discovers the grounds for disqualification only after judgment is entered or appeal filed. (*Urias, supra,* 234 Cal.App.3d at pp. 424–425; *Betz, supra,* 16 Cal.App.4th at p. 940.) Although a party has an

obligation to act diligently, he or she is not required to launch a search to discover information that a judicial officer should have disclosed. (*Urias, supra,* 234 Cal.App.3d at p. 425 [party not required to investigate to ascertain a judge's former clients]; *Betz, supra,* 16 Cal.App.4th at pp. 935, 937 [parties not required to investigate to ascertain clients of law firm in which arbitrator had been a partner].)

Thus, in *Giometti, supra,* 219 Cal. at pages 688–689, decided under the former disqualification statutes, a California Supreme Court order granting review of a case was considered void because one of the justices who signed it did not realize his relative represented the petitioner. As the *Giometti* court explained, it is the *fact* of disqualification that controls, not subsequent judicial action on that disqualification. (*Id.* at p. 689.) In *Urias, supra,* 234 Cal.App.3d 415, a judge who apparently did not know his former law firm represented the defendant in an action over which he presided was later deemed to have been disqualified when he entered summary judgment for that defendant. (*Id.* at p. 423.) The judgment he entered was considered ineffective and was subject to attack by the plaintiff, even after the action had concluded. (*Id.* at pp. 423–424.) Similarly, in *Tatum, supra,* 250 Cal.App.2d 40, also decided under the prior disqualification statutes, a judge who forgot that a trust portfolio he oversaw contained the stock of a defendant appearing before him was nevertheless considered disqualified and without authority to act, making his prior rulings in the action void. (*Id.* at p. 42.) Because an order rendered by a disqualified judge is null and void, it will be set aside without determining if the order was meritorious. (See *id.* at p. 43 [rejecting claim that trial was error free and therefore no prejudice was shown: "[I]t is no answer to say that the judgment was correct because the statute does not say that the judge is disqualified to decide erroneously but that he shall not decide at all"]; *McCauley v. Superior Court* (1961) 190 Cal.App.2d 562, 565 [12 Cal.Rptr. 119] [act of disqualified judge in holding preliminary hearing and holding defendant over for trial was void and set aside, even though evidence against the defendant "was substantial," and it was argued that "any other justice . . . would have done the same thing"].)[3]

---

[3] Defendants assert that *McCauley* has been overruled by *People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941], which held that "irregularities in the preliminary examination procedures which are not jurisdictional in the fundamental sense shall be reviewed under the appropriate standard of prejudicial error and shall require reversal only if defendant can show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination. The right to relief without any showing of prejudice will be limited to pretrial challenges of irregularities." *Pompa-Ortiz* is distinguishable. As discussed *ante,* once a judge is disqualified, he or she is deprived of the *fundamental jurisdiction* to hear and rule on any further matters. Moreover, the disqualification motion was not brought after a fair and error free trial that cured any prejudice.

Courts from other jurisdictions also hold that a disqualified judge is without power to render any decision, and any rulings made after the disqualification are void and must be vacated, without regard to the merits of the decision. (See, e.g., *People v. Dist. Ct. in and for Third Jud. Dist.* (1977) 192 Colo. 503 [560 P.2d 828, 833] [The judge erred in not granting a motion to disqualify, and at that time lost jurisdiction to act. "It follows that the respondent judge had no jurisdiction to decide the defendants' motion to dismiss . . . and we have no jurisdiction to consider whether or not he was correct in dismissing that case"]; *Bolt v. Smith* (Fla.Dist.Ct.App. 1992) 594 So.2d 864 ["Florida case law is well settled that once a trial judge has recused himself, further orders of the recused judge are void and have no effect"]; *Butler v. Biven Software, Inc.* (1996) 222 Ga.App. 88 [473 S.E.2d 168, 170] ["By the nature of [the judge's] recusal, any actions following his recusal or after he should have recused himself are naturally void"]; *Vacura v. Haar's Equipment, Inc.* (Minn. 1985) 364 N.W.2d 387, 393 ["[A]fter a judge has removed himself from a case, he may not issue an order which relates to the merits"]; *State ex rel. Johnson v. Mehan* (Mo.Ct.App. 1987) 731 S.W.2d 887, 888 ["Once a change of judge has been entered and the case transferred to another judge the disqualified judge has no further authority in the case and any orders made after the disqualification are void"]; *Blaisdell v. City of Rochester* (1992) 135 N.H. 589 [609 A.2d 388, 391] [voiding all subsequent rulings that were based on findings by a judge who should have been disqualified]; *Matter of Estate of Risovi* (N.D. 1988) 429 N.W.2d 404, 407 [holding that the orders signed by the judge after he was disqualified are void]; *State v. Nossaman* (1983) 63 Ore.App. 789 [666 P.2d 1351, 1355] ["A judgment entered by a judge who has been disqualified in the manner prescribed in the statute is void"]; *Degarmo v. State* (Tex.Ct.App. 1996) 922 S.W.2d 256, 267 ["If a judge is disqualified under the constitution, he is absolutely without jurisdiction in the case, and any judgment rendered by him is void and subject to collateral attack"].)

Relying on former section 170.3, subdivision (b)(4), the City asserts that because the facts giving rise to the disqualification were not known until after the ruling on the motion for nonsuit, that order may stand. This contention is unavailing.

Former Section 170.3, subdivision (b)(4) provides: "In the event that grounds for disqualification are first learned of or arise *after the judge has made one or more rulings in a proceeding but before the judge has completed judicial action in a proceeding*, the judge shall, unless the disqualification be waived, disqualify himself or herself, but in the absence of good cause the rulings he or she has made up to that time shall not be set aside by the judge who replaces the disqualified judge." (Italics added.)

The decision in *Urias, supra,* 234 Cal.App.3d 415 is again instructive. The Court of Appeal in *Urias* found that a judge who granted summary judgment for a defendant that had been represented by the judge's former law firm was disqualified from presiding in the case. However, by the time the disqualifying factors were discovered, a judgment had already been entered on the judge's summary judgment order. Thus, by its terms, former section 170.3, subdivision (b)(4) did not govern, as the judge had completed judicial action in the case. (*Urias, supra,* 234 Cal.App.3d at p. 423.) The *Urias* court held that the judge's summary judgment order was voidable. (*Id.* at pp. 423–424.)

Similarly in our case, by the time the facts giving rise to the nonsuit were discovered, the court had granted a nonsuit and dismissed the action. The City attempts to distinguish *Urias* by noting that in that case a judgment had been entered, while in this action, only an order of dismissal was filed. Thus, they assert, at the time the disqualifying events were discovered or known, the judge had not "completed judicial action" in the case. This contention is unavailing. Under former section 581d, a dismissal order acts as a final judgment in the action: "All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed *shall constitute judgments and be effective for all purposes,* and the clerk shall note those judgments in the register of actions in the case." (Italics added.) That section applies to dismissal orders following the grant of a motion for nonsuit. (See *Palazzi v. Air Cargo Terminals, Inc.* (1966) 244 Cal.App.2d 190, 192 [52 Cal.Rptr. 817].) Thus, as in *Urias,* the judge had completed judicial action in the case and the nonsuit order was void.

As discussed, *ante,* the California Supreme Court and some Courts of Appeal have held that the orders of disqualified judges are void and must be vacated. (See *Giometti, supra,* 219 Cal. at p. 689; *Ziesmer v. Superior Court* (2003) 107 Cal.App.4th 360, 363–364 [132 Cal.Rptr.2d 130]; *Zilog, Inc. v. Superior Court* (2001) 86 Cal.App.4th 1309, 1323 [104 Cal.Rptr.2d 173]; *In re Jenkins* (1999) 70 Cal.App.4th 1162, 1165–1167 [83 Cal.Rptr.2d 232]; *In re Jose S.* (1978) 78 Cal.App.3d 619, 628 [144 Cal.Rptr. 309].) Although the California Supreme Court has never reconsidered its holding in *Giometti,* some Courts of Appeal have concluded that such orders are voidable, meaning they only must be vacated if the issue is properly raised by a party in the trial court, because the superior court itself, if not the disqualified judge, retains fundamental subject matter jurisdiction. (*Betz, supra,* 16 Cal.App.4th at pp. 939–940; see also *People v. Barrera* (1999) 70 Cal.App.4th 541, 549–551 [82 Cal.Rptr.2d 755]; *Urias, supra,* 234 Cal.App.3d at pp. 423–424; *In re Christian J.* (1984) 155 Cal.App.3d 276, 279–280 [202 Cal.Rptr. 54].) Witkin has analyzed the issue and concludes that such orders are voidable, not void: "Little is accomplished by calling the judgment of a disqualified judge 'void.' . . . The real question—the effect of the judgment—is evaded by the loose application of this word of many meanings. The problem is one of

jurisdiction and, despite the fact that a disqualified judge totally lacks power to hear and determine the cause, the defect should not be considered a lack of jurisdiction of the subject matter . . . . [¶] . . . [I]t is only the particular judge who is disqualified; the court is not. Another judge of the same court, or a judge assigned from another court, may try the case." (2 Witkin, Cal. Procedure (4th ed. 1996) Courts, § 93, p. 131.)

Under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], we follow the Supreme Court's direction on this issue and conclude that the order granting nonsuit is void and must be set aside.

■ Further, even if our high court were to reconsider the issue, holding that the order is only voidable, the result would be the same. The difference between a void judgment and a voidable one is that a party seeking to set aside a voidable judgment or order must act to set aside the order or judgment before the matter becomes final. (*Urias, supra,* 234 Cal.App.3d at pp. 424–425; *Betz, supra,* 16 Cal.App.4th at p. 940.) It is undisputed that Christie timely moved to set aside the dismissal before the matter became final. Thus, whether void or voidable, the order must be vacated. The order and dismissal are a nullity because Judge Foerster acted without jurisdiction in granting the motion because he was deemed disqualified to act in the matter as of the time of his conversation with Judge Jones preceding his ruling on the nonsuit motion.

■ In support of its contention that the court's grant of nonsuit must be reversed, the City points out that former section 657 requires a showing on a motion for new trial based upon irregularity in the proceedings that the actions of the judge materially affected the substantial rights of a party and prevented the party from having a fair trial: "The verdict may be vacated and any other decision may be modified or vacated, in whole or in part, and a new or further trial granted on all or part of the issues, on the application of the party aggrieved, for any of the following causes, *materially affecting the substantial rights of such party*: [¶] 1. Irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion *by which either party was prevented from having a fair trial.*" (Former § 657, italics added.)

However, because Judge Foerster lacked the power to rule on defendants' motion for nonsuit, his action in proceeding with the hearing on the motion constituted a denial of a fair hearing. (2 Witkin, Cal. Procedure, *supra,* Jurisdiction, §§ 293–294, p. 864.) Where a party is denied a fair hearing because of the misconduct of the court, the matter is reversible per se. (9 Witkin, Cal. Procedure, *supra,* Appeal, § 449, p. 497; *Fewel v. Fewel* (1943) 23 Cal.2d 431, 433 [144 P.2d 592].)

Further, even if a showing of actual prejudice or denial of a fair trial were required, Christie meets both requirements. In arguing that there was no prejudice, the City asserts that the evidence showed that the actual communication between Judge Foerster and Judge Jones was innocent and harmless. However, as we discussed *ante*, since no writ of mandate was filed challenging Judge Warner's conclusion that "a reasonable person aware of the facts would entertain a doubt as to the propriety of Judge Foerster's actions in communicating with Judge Jones and might reasonably entertain a doubt that Judge Foerster would be able to be impartial . . . ", that finding is binding upon us. Because Judge Jones, unbeknownst to either him or Judge Foerster, was disqualified at the time they spoke of the City's motion for nonsuit, the conversation was improper, and gave rise to a doubt as to whether Judge Foerster would be impartial in ruling on the motion for nonsuit. This is a sufficient showing of prejudice to affirm a grant of new trial. (See *Malkasian v. Irwin* (1964) 61 Cal.2d 738, 747 [40 Cal.Rptr. 78, 394 P.2d 822] [grant of new trial affirmed on grounds of misconduct of counsel, based upon single comment in closing argument that was not serious error and not objected to]; *Brown v. George Pepperdine Foundation* (1943) 23 Cal.2d 256, 262 [143 P.2d 929] [grant of new trial affirmed because error might "possibly have been prejudicial"].) As Witkin states, "If the trial judge deems the error prejudicial and grants a new trial, the reviewing court will normally uphold the order, on the theory that the judge is better able to determine the prejudicial effect of error committed during the trial. In other words, on an appeal from an order granting a new trial the burden of showing prejudice is no longer on the party against whom the error was committed." (9 Witkin, Cal. Procedure, *supra*, Appeal, § 412, p. 463.)

We cannot say that the trial court abused its discretion in finding prejudice and an effect on Christie's right to a fair and impartial hearing and trial where any reasonable person would doubt that Judge Foerster could be impartial in his ruling on the City's motion for nonsuit based upon his conversation about the case with a disqualified judge immediately before he granted the motion. "The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears. This is particularly true when the discretion is exercised in favor of awarding a new trial, for this action does not finally dispose of the matter. So long as a reasonable or even fairly debatable justification under the law is shown for the order granting the new trial, the order will not be set aside. [Citations.]" (*Jiminez v. Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681].)

## DISPOSITION

The order granting a new trial is affirmed. Christie shall recover his costs on appeal.

Benke, Acting P. J., and McIntyre, J., concurred.

Apellants' petition for review by the Supreme Court was denied April 26, 2006, S141368.