Filed 1/20/23  Leyva v. Ortiz CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| GUADALUPE LEYVA et al., | C095423 |
| Plaintiffs, Cross-defendants and Respondents, | (Super. Ct. No. STK-CV-URP-2016-0007213) |
| v. | |
| JOSE DE JESUS ORTIZ, | |
| Defendant, Cross-complainant and Appellant; | |
| LORENZO ORTIZ, | |
| Defendant and Appellant. | |

When Natividad Ortiz[1] passed away in 1981, her estate went through probate.  In 1983, interest in the residence she owned was divided in equal shares to each of her nine children (the appellants and respondents).  Respondents brought the instant suit seeking to sell the property and divide the sales proceeds alleging, in part, they were never

_____

[1] Also known as Maria Hernandez Ortiz.

1

notified of the division of property in 1983. The trial court ruled in respondents' favor. However, before the trial judge, Judge George Abdallah, ruled on the matter, the presiding judge of the San Joaquin County Superior Court ordered Judge Abdallah disqualified pursuant to Code of Civil Procedure section 170.3.[2] On appeal, appellants challenge the merits of the trial court's ruling, but also claim the trial court's order of judgment was void because Judge Abdallah was disqualified prior to ruling on the matter. We agree the trial judge had been disqualified prior to entering its ruling and the judgment is thereby void. Thus, we vacate the judgment and remand to the trial court.[3]

## FACTUAL AND PROCEDURAL BACKGROUND

Given the nature of the resolution on this appeal, we need not recite the facts of the underlying lawsuit. It suffices to say that the underlying case involves an intrafamilial dispute over the ownership of the family home. In 1983, appellant Jose de Jesus Ortiz was the administrator of Natividad's estate. Ann Cerney,[4] a local probate attorney at the time, represented appellants during the course of the administration. On May 19, 1983, a judgment directing final distribution was issued, distributing to each of Natividad's nine surviving children a one-ninth undivided interest in her house.

In 2016, respondents filed a complaint for partition under sections 872.210 and 872.230, seeking to sell the house and divide the proceeds among the eight children and one descendant of the ninth child who was now deceased. One of the issues in the case is

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

[3] Because we conclude the judgment was void, we need not address appellants' challenges to the merits of the judgment. On remand the parties will have the opportunity to relitigate the merits.

[4] Appellants allege, and respondents do not assert otherwise, that "Retired Judge Elizabeth Humphreys, who is also the spouse of Judge Abdallah, was the sole associate attorney at the Law Offices of Ann Cerney during the course of administration."

whether all nine children were properly notified of the prior division. The trial judge, Judge Abdallah, found appellant Jose De Jesus Ortiz did not disclose the provisions of the estate administration to all his siblings.

Trial began on July 13, 2021; Judge Abdallah presided over it. On July 16, 2021, the presiding judge of the superior court entered an order disqualifying Judge Abdallah in the instant matter pursuant to section 170.3, "[e]ffective" July 14, 2021, and assigning the matter to another judge for all purposes. Trial concluded on July 15, 2021, in front of Judge Abdallah, and Judge Abdallah rendered a decision from the bench that same day. Judge Abdallah issued a written order on September 14, 2021. Notice of entry of judgment was filed on November 5, 2021.

Notice of appeal was filed on December 16, 2021.

On June 9, 2022, the presiding judge of the superior court issued an order vacating the prior disqualifying order nunc pro tunc. In the attached declaration in support of the order, the court manager stated the following: "While the trial was being held, an Order of Disqualification of Judge Under CCP § 170.3 and Judicial Reassignment was generated in error by the clerk's office and signed by Presiding Judge Xapuri Villapudua on July 16, 2021, with an effective date of July 14, 2021 for the judicial reassignment. Upon further review, it has been determined that there was no recusal by the assigned Judicial Officer that presided over the trial; therefore, this order should have never been generated or signed and the case should have never been reassigned. The ruling given on July 15th 2021 and the subsequent judgment entered on September 16, 2021[5] by Judge Abdallah is reaffirmed with valid standing." Respondents have submitted a copy of this order.

---

**5** As there appears to be only one judgment issued, this appears to refer to the written order dated and stamped "filed" on September 14, 2021.

3

## DISCUSSION

Appellants argue that Judge Abdallah was disqualified during trial, which rendered his judgment after trial void and this matter should be remanded for a new trial. Respondents disagree, arguing that the subsequent order nunc pro tunc, vacated the disqualification order, such that the judgment remains intact. Appellants counter that since that order vacating the disqualification order was issued after the notice of appeal was filed, the superior court had no jurisdiction to enter the order and it had no impact on the disqualification order. We agree with appellants.

Section 170.3, subdivision (d), states in relevant part: "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought only by the parties to the proceeding." This provision "specifies the exclusive appellate remedy with regard to a statutory claim that the superior court erred in . . . denying a motion to disqualify a judge. [Citations.]" (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063; accord, *People v. Hull* (1991) 1 Cal.4th 266, 275.) In light of this rule, the issue of whether the original disqualification order was proper is not before us. Nor does it appear that either party challenged that disqualification order by filing a petition for writ of mandate. Accordingly, for purposes of this appeal, we proceed on the assumption that the disqualification order was correct. (See *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 118 ["[T]he general rule [is] that trial court rulings are presumed correct"].)

Thus, the issue in this case is whether, and to what extent, the presiding judge's June 9, 2022 order properly vacated the disqualification order such that the judgment in this case is reviewable on the merits of the raised challenges. Because the presiding judge's order vacating the disqualification order turns on the application of the statute to undisputed facts, we find the de novo standard of review appropriate. (See *Jane Doe 8015 v. Superior Court* (2007) 148 Cal.App.4th 489, 493.)

4

The statutory scheme governing the disqualification process sets forth the procedures, depending on the type of challenge and request for disqualification. (See, e.g., §§ 170.1, 170.3 & 170.6.) Challenges for cause must allege one or more of the grounds for disqualification listed in section 170.1. Section 170.3 provides the procedures to be followed in disqualification for cause proceedings. A challenged judge may respond in one of three ways, including filing a consent to the disqualification and notifying the presiding judge to appoint a replacement. (§§ 170.3, subd. (c)(3), 170.4, subd. (b); see also *Hayward v. Superior Court* (2016) 2 Cal.App.5th 10, 36 [discussing the process under § 170.3].)

If disqualified, a judge shall not further participate in the proceeding (except as provided in § 170.4), unless his or her disqualification is waived by the parties.[6] (§ 170.3, subd. (a)(1).) Under section 170.4, a disqualified judge may still take certain actions on a case, none of which are applicable here.[7] Absent those circumstances, "a judgment rendered by a disqualified judge is void." (*Giometti v. Etienne* (1934) 219 Cal. 687, 689, citing *Cadenasso v. Bank of Italy* (1932) 214 Cal. 562; see also § 170.4, subds. (a) & (c).) "[I]t is the fact of disqualification that controls, not subsequent judicial action

---

[6] Under certain circumstances, it is possible for the parties to waive the judge's disqualification; the stipulation waiving it must state the basis for the disqualification, be signed by the parties and attorneys and filed with the court. (§ 170.3, subd. (b)(1).) The court may then proceed as if no disqualification existed. (§ 170.3, subds. (a)(1) & (b)(1).) The parties have not indicated that such a waiver exists; the record does not disclose one.

[7] A disqualified judge may do any of the following: "(1) Take any action or issue any order necessary to maintain the jurisdiction of the court pending the assignment of a judge not disqualified. [¶] (2) Request any other judge agreed upon by the parties to sit and act in his or her place. [¶] (3) Hear and determine purely default matters. [¶] (4) Issue an order for possession prior to judgment in eminent domain proceedings. [¶] (5) Set proceedings for trial or hearing. [¶] (6) Conduct settlement conferences." (§ 170.4, subd. (a).)

on that disqualification." (*Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 777.)

The cases discussing judicial disqualifications lead us to conclude that the order disqualifying Judge Abdallah rendered his subsequent judgment in this case void. (See *Christie v. City of El Centro, supra*, 135 Cal.App.4th at p. 776 [concluding that because the judge was "disqualified at the time he granted the City's motion for nonsuit, that ruling was null and void and must be vacated regardless of a showing of prejudice"]; *Rossco Holdings, Inc. v. Bank of America* (2007) 149 Cal.App.4th 1353, 1363-1364 [where facts supporting judge's disqualification arose prior to issuing an order compelling arbitration, that order was void and properly vacated]; *Hayward v. Superior Court, supra*, 2 Cal.App.5th at pp. 39-43 [where judge was disqualified pursuant to § 170.3 after the presiding judge made " 'no finding' " on the truth of the allegations, all the judge's subsequent issues were void].)

The next question we must ask is whether the presiding judge's order of June 9, 2022, vacating the order disqualifying Judge Abdallah, had any impact on the disqualification order when it was issued after the notice of appeal was pending? Appellants argue that because the appeal was already perfected, the superior court lost jurisdiction to rule on matters that impact the judgment in a case, i.e., the disqualification order. Respondents fail to address this point. We agree with appellants.

Subject to certain exceptions involving the enforcements of judgments not relevant here,[8] a perfected appeal divests the trial court of further jurisdiction as to all questions affecting the validity of the judgment or order appealed from, and the trial court during

---

[8] For example, section 917.4 provides that the perfecting of an appeal shall not stay enforcement of the judgment if the judgment appealed from directs the sale of real property that is in the possession or control of the appellant. The parties have not indicated there is any issue as to enforcement here.

that period has no power to amend or correct the judgment. (*Linstead v. Superior Court* (1936) 17 Cal.App.2d 9, 12; see *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 666 ["an appeal from a judgment order strips the trial court of any authority to rule on the judgment"].) "Indeed, section 916, as a matter of logic and policy, divests the trial court of jurisdiction over the subject matter on appeal—i.e., jurisdiction in its fundamental sense. [Citation.] The purpose of the automatic stay under section 916 is to preserve 'the status quo until the appeal is decided' [citation], by maintaining 'the rights of the parties in the same condition they were before the order was made' [citation]. Otherwise, the trial court could render the 'appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.' [Citation.]" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 198.) Specifically, a trial court has no jurisdiction to vacate, modify or otherwise change an order that is the subject of a pending appeal. (*Gallenkamp v. Superior Court* (1990) 221 Cal.App.3d 1, 12, ["Until remittitur issues, the lower court cannot act upon the reviewing court's decision; remittitur ensures in part that only one court has jurisdiction over the case at any one time"]; see, e.g., *Copley v. Copley* (1981) 126 Cal.App.3d 248, 298 [while an appeal is pending, the trial court is without power to hear a motion to vacate judgment from which an appeal has been taken].)

Here, appellants perfected the appeal by filing a notice of appeal on December 16, 2021. Pursuant to the above-cited case law, once the appeal was perfected, the trial court was divested of its ability to change, modify or vacate orders which were subject to this appeal. As we have previously concluded, the disqualification order directly impacted the judgment, which is the subject of this appeal. (Cf. *Hemingway v. Superior Court* (2004) 122 Cal.App.4th 1148, 1158 [the right to exercise a judicial challenge is a substantial right and an important part of due process].) Thus, the trial court had no jurisdiction to enter the order vacating the disqualification order while the appeal was pending. The fact that the presiding judge attempted to vacate the disqualification order

nunc pro tunc, in an effort to make the effective date at an earlier time when the court did have jurisdiction, does not change our conclusion. Assuming a lower court has jurisdiction to enter a *proper* nunc pro tunc order after a notice of appeal has been filed, the case law demonstrates that a nunc pro tunc order cannot be used at any time to correct legal error, as was done here.

" ' "A nunc pro tunc order or judgment is one entered as of a time prior to the actual entry, so that it is treated as effective at the earlier date." ' (*In re Marriage of Padgett* (2009) 172 Cal.App.4th 830, 851.) Trial courts have the authority to enter nunc pro tunc orders to address *clerical* errors, but not *judicial* errors. (*People v. Kim* (2012) 212 Cal.App.4th 117, 124.)" (*Sannmann v. Department of Justice* (2020) 47 Cal.App.5th 676, 683.)

"An order made nunc pro tunc should correct clerical error by placing on the record what was *actually decided* by the court *but was incorrectly recorded*. It may not be used as a vehicle to review an order for legal or judicial error by 'correcting' the order in order to enter a new one." (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 891, italics added.) " 'A court can always correct a clerical, as distinguished from a judicial error which appears on the face of a decree by a nunc pro tunc order. [Citations.] . . . "The function of a nunc pro tunc order is merely to correct the record of the judgment and not to alter the judgment actually rendered—not to make an order now for then, but to enter now for then an order previously made. . . ." ' " (*Id.* at p. 890, quoting *Estate of Eckstrom* (1960) 54 Cal.2d 540, 544.) "[N]unc pro tunc orders may not be made to 'make the judgment express anything not embraced in the court's decision, even though the proposed amendment contains matters which ought to have been so pronounced. [Citations.]' " (*Ibid*.) " 'It is only when the form of the judgment fails to coincide with the substance thereof, as intended at the time of the rendition of the judgment, that it can be reached by a corrective nunc pro tunc order.' " (*Ibid*.)

As we previously concluded, the disqualification order rendered Judge Abdallah's subsequent judgment in this case void. Although the court manager's declaration states that the disqualification order was generated and signed in error, we cannot ascertain whether the disqualification order itself was improper for two reasons. First, the disqualification order was a nonappealable order. (§ 170.3, subd. (d).) Next, even if we could, factual concerns preclude our conclusion that the order was entered in error. Primarily, the declaration provides insufficient evidence of the error, the nature of which appears to be outside the record before us. The declaration does not sufficiently explain the error causing the generation of the order, or how the order was signed without the requisite recusal notice or written statement of challenge. (§ 170.3, subds (a) & (c)(2).) Nor does it put to rest appellants' reasonable supposition that recusal was based on the fact that Judge Abdallah's spouse was the sole associate attorney of Ann Cerney at the time the estate was administered. Put simply, either the recusal or statement of challenge contained erroneous facts regarding cause for Judge Abdallah's disqualification or the presiding judge signed the order without any such stated cause, in violation of section 170.3. Either scenario leads to a legal, not clerical, error. (See *In re Candelario* (1970) 3 Cal.3d 702, 705 ["The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered' "].) Here, while the presiding judge may have recognized it had erred in issuing the 170.3 order, its use of a nunc pro tunc order, after this appeal had been perfected, was an improper attempt to correct that error in violation of the principles cited *ante*.

This case is similar to *Hemingway v. Superior Court, supra*, 122 Cal.App.4th 1148. In that case, the defendant was charged with committing several offenses relating to domestic violence. (*Id.* at p. 1151.) Defense counsel filed a peremptory challenge pursuant to section 170.6. The minute order addressed the challenge as follows: " 'Affidavit of prejudice pursuant to Civil Code of Procedure [*sic*] 170.6 filed by defense against Pamela L. Iles, Judge. Civil Code of Procedure [*sic*] 170.6 is taken under

9

submission. . . . .' " (*Hemingway*, at p. 1152.)  Less than a month later, the court made a nunc pro tunc entry in the minutes dating back to the previous order stating the " '[m]otion taken under submission by the court is incorrect.  (Entered NUNC_PRO_TUNC on 05/20/04)  Motion denied. (Entered NUNC_PRO_TUNC on 05/20/04)  [¶]  Court finds the motion is untimely. . . . (Entered NUNC_PRO_TUNC on 05/20/04).' " (*Ibid*.)  That same day, the court explained in open court that it was " 'correcting that at this point in time because the court's intention [ ] was to deny the affidavit under [section] 170.6, and I inadvertently used the wrong language because I wasn't taking it under submission. . . . [¶]  And so what I'm doing is, at this point in time, correcting and amending the record . . . [to show the challenge] is denied as untimely.' " (*Ibid*.)

The appellate court found the nunc pro tunc order was entered improperly.  It concluded that "[t]he superior court made no effort to explain and, in fact, concedes the court's order 'correcting' the minute order was erroneous because it was not a proper use of a nunc pro tunc order." (*Hemingway v. Superior Court, supra*, 122 Cal.App.4th at p. 1157.)  The appellate court ordered the superior court to vacate its nunc pro tunc order denying the defendant's peremptory challenge pursuant to section 170.6, and to enter a new and different order accepting the peremptory challenge of Judge Pamela L. Iles. (*Hemmingway*, at p. 1159.)

Other courts have invalidated nunc pro tunc orders that served to change a result that was intended by the court at the time it exercised its discretion.  For example, in *Hamilton v. Laine, supra*, 57 Cal.App.4th at pages 887-889, 10 years after entry of a judgment establishing a medical trust for a minor, the trial court entered an order establishing a special needs trust. The trial court did so nunc pro tunc, in an effort to avoid a statutory lien for payments made by a governmental agency as a result of the structure of the trust originally established.  The trial court stated that the court " 'should have . . . caught' " the issue before and was attempting to rectify the problem.  (*Id.* at

10

p. 881.) The appellate court concluded it "is patently obvious the nunc pro tunc order was not made to cure a clerical error or omission in the order originally rendered, but was made solely to remedy perceived judicial error." (*Id*. at p. 892.) Unlike a proper order entered nunc pro tunc, the order improperly changed the substance of the original order, "materially alter[ing] the relative rights of the parties affected by the original order in a manner not contemplated." (*Ibid*.)

In *Sannmann v. Department of Justice*, after pleading guilty to robbery and completing probation, the defendant was granted relief under Penal Code section 1203.4: The court set aside the prior plea, entered a plea of not guilty and dismissed the accusatory pleading. (*Sannmann v. Department of Justice, supra*, 47 Cal.App.5th at p. 679.) When the defendant learned that relief did not permit him to own or possess a firearm, the defendant moved to set aside the previous order, withdraw his plea to the robbery charge and enter a plea of guilty to misdemeanor grand theft. (*Id*. at p. 680.) The court granted this request, nunc pro tunc to the date of the original plea. On appeal, the appellate court concluded this relief did not correct an error in recording the original plea; it improperly changed the record to reflect a different plea than the one actually entered. (*Id*. at pp. 683-684.)

In *People v. Borja* (2002) 95 Cal.App.4th 481, long after the defendant had served a probationary term and a 365-day sentence, he obtained a nunc pro tunc modification of the probation condition to a sentence of 364 days. This change was necessary to avoid deportation for an aggravated felony under federal immigration laws. (*Id*. at pp. 483-484.) The appellate court concluded the modification was invalid because the court was not correcting a clerical order. (*Id*. at p. 485.) Rather, it was clearly a retroactive change in sentence—relief the defendant sought because changes in federal law since the original sentencing made a sentence of less than one year critical to whether he could be deported. (*Id*. at pp. 483-484.) The appellate court explained the order was invalid because it imposed a sentence different from the one "intended, imposed and served" (*id*. at p. 485)

11

and " ' "a nunc pro tunc order cannot declare that something was done which was not done." ' " (*Ibid.*, quoting *Johnson & Johnson v. Superior Court* (1985) 38 Cal.3d 243, 256.)

Thus, for the foregoing reasons, we agree with appellants that the judgment entered in this matter is void and we must remand this matter for further proceedings before the trial court.

## DISPOSITION

We conclude the judgment is void, and we therefore vacate it. We remand to the trial court for further proceedings consistent with this opinion. Appellants are entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
EARL, J.

We concur:

/s/
RENNER, Acting P. J.

/s/
KRAUSE, J.