[No. B189963. Second Dist., Div. Three. Apr. 19, 2007.]

ROSSCO HOLDINGS INC., et al., Plaintiffs and Respondents, v. BANK OF AMERICA, etc., et al., Defendants and Appellants.

**COUNSEL**

Katten Muchin Rosenman, Stuart M. Richter, Marlyn M. Gates and Ryan J. Larsen for Defendants and Appellants.

L. M. Ross, Leonard M. Ross; Michelman & Robinson, Dean B. Herman and Catherine L. Rivard for Plaintiffs and Respondents.

**OPINION**

**CROSKEY, J.**—One party to a litigation moved to compel arbitration. The trial court judge granted the motion and the case proceeded to completion. Thereafter, the parties filed cross-petitions to vacate and confirm the arbitration award. At this point, the judge disqualified himself, due to previous conversations with dispute resolution providers regarding possible employment, which conversations had occurred prior to the judge's initial ruling on

the motion to compel arbitration. The case was transferred to a new judge. The unsuccessful party at the arbitration moved to vacate the trial court's earlier ruling compelling arbitration, based on the first judge's apparent disqualification to issue that order. The trial court granted the motion, and issued an order vacating not only the order compelling arbitration, but the arbitration award itself. The party successful at the arbitration appeals. We conclude the trial court did not err in vacating the order compelling arbitration, but that it was premature to vacate the arbitration award. We reverse and remand with directions for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

While the issues underlying the parties' dispute are complex, the factual and procedural history leading to this appeal is undisputed. On January 24, 2004, Rossco Holdings Incorporated, Leonard M. Ross Revocable Trust and Leonard Ross (collectively, Ross) filed this action against Bank of America, NT&SA, two of its employees, and related entities (collectively, Bank). The complaint stated 22 causes of action in tort and contract arising out of various complex and high-value financial transactions.[1]

On February 25, 2004, the Bank moved to compel arbitration or judicial reference, based on arbitration clauses contained in some of the transaction documents. A hearing was held on March 19, 2004, before the Honorable Alexander Williams III. At one point in the hearing, Judge Williams disclosed that his father-in-law might have known Ross; none of the parties suggested this would require Judge Williams's disqualification.[2] After hearing argument, the court granted the motion compelling arbitration or reference. Given the court's ruling, Ross indicated a preference for arbitration. The court also offered to consider a reasonable stay to permit appellate review; Ross declined. The court directed the parties to work out the details of the arbitration and did not dictate or recommend to the parties as to their selection of an alternative dispute provider. On April 4, 2004, the parties stipulated to arbitration before a three-judge panel at JAMS. The case proceeded to arbitration.

While the arbitration was pending, Judge Williams was asked to resolve one additional issue. Ross had moved to use funds available under a line of credit implicated in the action to pay obligations on another agreement also implicated in the case.[3] Judge Williams indicated that he did not think Ross

---

[1] The body of the complaint is 51 pages long. With attached exhibits, it is 239 pages.

[2] At a later hearing, Judge Williams also disclosed that he had an account at Bank; again, this was not suggested as a basis for disqualification.

[3] Ross did not bring this motion before the arbitrators as no arbitrators had yet been appointed and it appeared that time was of the essence.

had met his burden under California law for a preliminary injunction, and also believed "more fundamentally that this court lacks jurisdiction to grant that [relief] because the case has been sent to arbitration." The court denied the motion and "le[ft] the matter to the arbitrator." During the course of the hearing, Judge Williams remarked that Ross made an alternative argument based on New York law, and Judge Williams rejected the argument stating, "I am not a New York court."[4]

On December 22, 2004, while the arbitration was pending, Division Five of the Second Appellate District issued a published opinion in a case entitled *Hartford Casualty Insurance Company v. Superior Court* (Dec. 22, 2004, B176439).[5] The *Hartford* opinion interpreted Code of Civil Procedure section 170.1, subdivision (a)(8), which provides that a judge is disqualified from ruling on a matter enforcing an arbitration agreement if the judge has, within the past two years, participated in discussions regarding prospective employment as a dispute resolution neutral. The *Hartford* court concluded the unambiguous language of the statute mandated disqualification of a judge who met its terms, even if the judge's discussions regarding prospective employment were "superficial." Judge Williams had previously had discussions regarding prospective employment as a dispute resolution neutral, which had commenced in May 2003. Until the *Hartford* opinion, however, he had missed the significance of those discussions to his ability to rule on matters relating to arbitration.[6] After the *Hartford* case highlighted the statute, Judge Williams became aware of the issues it raised, and "addressed it in a number of cases." Judge Williams did not, however, make an immediate disclosure to the parties in this case.[7] Supreme Court review of *Hartford* was granted on March 23, 2005, No. S131554.

Meanwhile, the arbitration proceeded. On October 18, 2004, Ross filed a first amended complaint in the arbitration, which encompassed 16 causes of

---

[4] The court later added, somewhat sarcastically, "[Ross] argues New York law applies in this case in deciding whether to grant a preliminary injunction. I mean, that makes sense, the property is in Beverly Hills, the Bank is in California, and the court's here in Los Angeles, so of course why not apply New York law, and excuse my tongue-in-cheek." The court further explained that even if New York law applied for contract interpretation, forum law would still govern whether a preliminary injunction should issue.

[5] As we will discuss below, review was granted in *Hartford* and subsequently dismissed, resulting in the nonpublication of the opinion.

[6] As Judge Williams subsequently explained, "That is a statute that came on the books a couple of years ago, and somehow escaped the attention of almost every judge—of every judge I know, except for one. [¶] There was a decision in a case called *Hartford*, which highlighted the statute." He further explained, "If I did not make a disclosure, it's very simply because I did not know about the statute, along with 99.9 percent of the judges and 100 percent of the lawyers that I have dealt with."

[7] As Judge Williams subsequently explained, "One of the reasons I haven't gone back and dug up all my cases is the law is rapidly evolving."

action. The Bank was granted leave to file a cross-complaint in the arbitration. A discovery order allowed each party to conduct 60 hours of deposition discovery. Document discovery was also conducted. Numerous pretrial motions were resolved by the arbitrators, including demurrers, discovery motions, a motion for summary judgment, and a motion to exclude witnesses. A two-week arbitration hearing was held, resulting in an interim award on February 28, 2005, and a final award on July 15, 2005, both in favor of the Bank.[8] In sum, the arbitration process consumed more than a year, and resolved numerous factual and legal issues disputed by the parties. According to the arbitrators, this was a "high stakes" case that was "vigorously litigated" by both sides. Indeed, the Bank's award of prevailing party attorney's fees exceeded $700,000. The arbitrators noted that the parties agreed the transaction was governed by New York law, and indicated that they applied New York law, but used California law where there was no meaningful difference between the two. On August 1, 2005, Ross filed a petition to vacate the arbitration award.[9] On August 4, 2005, the Bank responded with a motion to confirm the award. Both were set for hearing on August 26, 2005.

A tentative ruling was prepared. When Judge Williams was preparing for calendar the day before, he realized that this was one of his cases that was implicated by Code of Civil Procedure section 170.1, subdivision (a)(8).[10] At the hearing on August 26, 2005, the court immediately disclosed the prior discussions. The court stated, "I am disclosing to you all that I have, in the last two years, participated in discussions regarding prospective compensated employment for service as a dispute resolution neutral. [¶] Such discussions

---

[8] The Bank was not, however, successful on its cross-complaint.

[9] Many of the issues raised in Ross's petition to vacate the award were based on the argument that the arbitrators exceeded their powers in that arbitration never should have been compelled in the first place. Ross's underlying challenges to the order compelling arbitration raised several arguments that he had not made in opposition to the motion to compel.

[10] The Bank latches onto Judge Williams's statements to this effect to conclude that "Judge Williams specifically stated that he did not even realize the existence, let alone the impact of the statute until preparing the night before the August 26, 2005 hearing on the motion to confirm the arbitration award." This is a misstatement of the record. At the hearing, Judge Williams clearly indicated that he had "lived with this since . . . the case law highlighted it at the beginning of this year, and [he had already] addressed it in a number of cases." Judge Williams explained that he had chosen not to "d[i]g up all [his] cases" because the law in this area was "rapidly evolving." He had simply not realized until the night before that *this* was a case in which he was disqualified under *Hartford*. We do not mean, by this, to imply that the trial court acted improperly by not immediately "digging up" his old cases and informing the parties of his potentially disqualifying conversations, in light of *Hartford*. However, the Bank's suggestion that Judge Williams learned of the effect of his conversations the night before the hearing and immediately disclosed them is contrary to the record.

commenced back in May of 2003."[11] Judge Williams went into no further detail on the scope of his discussions. However, it is apparent from the plain language of his disclosure that the discussions were not merely superficial, but commenced in May of 2003 and *continued* until, at least, August 26, 2003.[12]

Judge Williams also explained the controlling statute, and discussed the *Hartford* opinion. Judge Williams strongly disagreed with the *Hartford* opinion and the relevant statute, calling it a "ridiculous law that basically disqualifies not for reasons of actual conflict by virtue of having some contact with the parties before you, but by virtue of having contact with an industry." Judge Williams noted that *Hartford* was presently on review to the Supreme Court, and that there were bills pending to amend the statute, but acknowledged that Code of Civil Procedure section 170.1, subdivision (a)(8) was still controlling law by which he was bound. While Judge Williams normally gives the parties an opportunity to consider waiving any disqualification, Judge Williams correctly suspected that Ross would decline to do so.[13] The judge suggested the possibility that one of the parties might argue that the statute does not apply, but no argument to that effect was forthcoming. Ultimately, Judge Williams disqualified himself, and indicated to the parties that the question of whether he was disqualified when he made earlier rulings "is an issue that has to be addressed" before a new judge. The case was then transferred to the Honorable Mary Thornton House. The Bank did not attempt to challenge the disqualification order by petition for writ of mandate.

Ross moved to vacate the order compelling arbitration, in light of the fact that Judge Williams had engaged in conversations regarding prospective employment as a dispute resolution neutral prior to his ruling on the motion to compel arbitration, and was therefore disqualified when he entered the order. The Bank responded with a motion to stay the action until the Supreme Court's opinion in the *Hartford* case, and the enactment of then pending legislation to amend Code of Civil Procedure section 170.1, subdivision (a)(8). The trial court granted the motion to stay.

Effective September 22, 2005, the Legislature amended Code of Civil Procedure section 170.1, subdivision (a)(8) as an urgency matter. The stated purpose of the amendment was "to construe and clarify the meaning . . . of existing law and to reject the interpretation given to the law in [*Hartford*]."

---

[11] Judge Williams also signed a written "Notice of Intended Recusal," which stated the same facts.

[12] Otherwise, Judge Williams would not have stated that he participated in such discussions within "the last two years."

[13] Stated the judge, "It's a free chance at forum shopping and every lawyer dreams of that."

(Stats. 2005, ch. 332, § 2.) As pertinent to this case, the amendment added a definitional subdivision to Code of Civil Procedure section 170.1, subdivision (a)(8), which explains that, " '[p]articipating in discussions' or 'has participated in discussion' means that the judge solicited or otherwise indicated an interest in accepting or negotiating possible employment or service as an alternative dispute resolution neutral or responded to an unsolicited statement regarding, or an offer of, such employment or service by expressing an interest in that employment or service, making any inquiry regarding the employment or service, or encouraging the person making the statement or offer to provide additional information about that possible employment or service. If a judge's response to an unsolicited statement regarding, a question about, or offer of, prospective employment or other compensated service as a dispute resolution neutral is limited to responding negatively, declining the offer, or declining to discuss such employment or service, that response does not constitute participating in discussions."[14] (Code Civ. Proc., § 170.1, subd. (a)(8)(B)(i).) On November 16, 2005, the Supreme Court dismissed review in *Hartford*, in light of the amendments to Code of Civil Procedure section 170.1.

On January 5, 2006, Bank moved for reconsideration of the order that Judge Williams was disqualified, based on the amendments to the statute.[15] In other words, Bank sought a judicial redetermination that Judge Williams should not have been disqualified, in light of the new law. The trial court set all pending motions for hearing on the same date.

At the hearing, on February 14, 2006, counsel for the Bank represented that it had contacted Judge Williams by letter to ask him to clarify the nature and extent of his conversations regarding prospective employment as a dispute resolution neutral; Judge Williams had not responded. In the absence of any *actual* indication that Judge Williams's conversations were of the sort that would have been disqualifying under *Hartford* but not disqualifying under the amendment to Code of Civil Procedure section 170.1, subdivision (a)(8), the Bank asked the court to *infer* this conclusion from Judge Williams's statements at the hearing where he recused himself.

The trial court took the matter under submission. Ultimately, the court concluded that Judge Williams's recusal had to stand. The court stated that there was "no evidence before the court which would support a determination

---

[14] The amendment also clarified that discussions regarding prospective employment as a dispute resolution neutral also disqualify a judge from a matter involving issues relating to the enforcement of an arbitration award. (Code Civ. Proc., § 170.1, subd. (a)(8)(A)(ii).)

[15] Recognizing the possible procedural bars to a motion for reconsideration at this juncture, the Bank alternatively characterized its motion as a subsequent application of its motion to confirm the arbitration award.

that there was no actual conflict, no basis for recusal, and no good cause to set aside the order compelling arbitration. Judge Williams recused himself on the basis that the law required him to do so." Further concluding that a judge's disqualification arises when *the facts of disqualification exist*, not when the judge becomes aware that those facts constitute a legal basis for disqualification, the court determined Judge Williams's order compelling arbitration was entered at a time when he was disqualified, and was therefore void. As the arbitration arose from a void order compelling arbitration, the trial court *also* vacated the arbitration award. The Bank filed a timely notice of appeal.[16]

## ISSUES ON APPEAL

On appeal, the Bank argues that: (1) Judge Williams was not disqualified under the amendment to Code of Civil Procedure section 170.1, subdivision (a)(8), so his order compelling arbitration should stand; (2) even if Judge Williams's disqualification was proper, his order compelling arbitration should not be set aside in the absence of good cause to do so, and there was no good cause in the absence of actual bias; and (3) Code of Civil Procedure section 170.1, subdivision (a)(8), in either incarnation, is unconstitutionally vague. We conclude the first two arguments are meritless and the third not cognizable in this appeal. We therefore uphold the trial court's ruling vacating the order compelling arbitration. However, we conclude the vacation of the arbitration award itself is not a necessary consequence of the vacation of the order compelling arbitration, and remand for further proceedings.

## DISCUSSION

### 1. *Judge Williams Was Properly Disqualified*

The Bank argues that Judge Williams's order compelling arbitration should not have been vacated as, in retrospect, it appears that Judge Williams would not have been disqualified under the amendments to Code of Civil Procedure section 170.1, subdivision (a)(8).[17] In short, the Bank argues that:

---

[16] Code of Civil Procedure section 1294, subdivision (c), renders appealable "[a]n order vacating an [arbitration] award unless a rehearing in arbitration is ordered." As no rehearing was ordered, the order vacating the award is appealable. While it is possible that a new arbitration hearing may subsequently be ordered in this case, Ross provides no authority for the proposition that the question of the appealability of the instant order vacating the arbitration award turns on a possible future order of the trial court.

[17] The Bank also argues that the amendments to the statute apply retroactively. We need not address this argument as, assuming the amendments apply, Judge Williams was properly disqualified.

(1) Judge Williams indicated no *actual* bias; (2) Judge Williams believed *Hartford* was a "ridiculous decision" because it disqualified judges who lacked actual bias; and (3) the Legislature amended Code of Civil Procedure section 170.1, subdivision (a)(8), because it likewise agreed that *Hartford* was ridiculous. The Bank vastly overstates its case. Code of Civil Procedure section .170.1 does not disqualify *only* those judges who have actual bias; it disqualifies judges in situations where the Legislature has presumed bias, or the appearance of possible bias, may exist. (See Code Civ. Proc., § 170.1, subd. (a)(6)(A)(iii) [disqualifying a judge if a "person aware of the facts might reasonably entertain a doubt that the judge would be able to be impartial"].) Moreover, while both Judge Williams and the Legislature apparently disagreed with *Hartford*, there is no indication that their criticisms of the *Hartford* decision were identical. Indeed, the record suggests that they were not. For example, Judge Williams disagreed with *Hartford and Code of Civil Procedure section 170.1*, to the extent that they both disqualified a judge by virtue of contact with the dispute resolution "industry," rather than contact with someone involved in the case. Yet even after the Legislature amended Code of Civil Procedure section 170.1 to eliminate from its scope certain nondisqualifying contacts, the statute *continued* to disqualify judges who have had substantial negotiations for employment as dispute resolution neutrals, regardless of whether the employment negotiations were with a neutral implicated in the case before the judge. Finally, and most importantly, it is *apparent* that, despite the Bank's inferences to the contrary, Judge Williams participated in discussions for prospective employment that were considerably more substantial than the simple rejections of solicitations allowed by Code of Civil Procedure section 170.1, subdivision (a)(8)(B)(i). In August 2005, Judge Williams represented that he had engaged in discussions within the past two years, and that such discussions had commenced in May 2003. As such discussions covered *at least three months*, they clearly fell within the scope of prohibited discussions, and disqualified Judge Williams from ruling on arbitration-related matters.

■ Orders made by a disqualified judge are void. (*Cadenasso v. Bank of Italy* (1932) 214 Cal. 562, 567–568 [6 P.2d 944]; *Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 776 [37 Cal.Rptr.3d 718].) There is a dispute in recent appellate authority as to whether such orders should be considered void or only voidable at the option of a party; the Supreme Court's latest opinion on the matter held them to be void. (*Christie v. City of El Centro, supra,* 135 Cal.App.4th at pp. 779–780.) The distinction is of no difference in this case as Ross timely requested the order compelling arbitration to be

vacated. Nonetheless, whether the order of a disqualified judge is considered void or voidable, it is clear that it is only the disqualified judge who cannot act; the *court* retains jurisdiction over the subject matter. (See 2 Witkin, Cal. Procedure (4th ed. 1996) Courts, §§ 93, 94, pp. 131–132.)

█ "[D]isqualification occurs when the facts creating disqualification arise, not when the disqualification is established." (*Christie v. City of El Centro, supra*, 135 Cal.App.4th at p. 776.) "[I]t is the *fact* of disqualification that controls, not subsequent judicial action on that disqualification." (*Id.* at p. 777.) █ On February 25, 2004, Judge Williams had before him a motion to compel arbitration in this case. At that point in time, he had, within the past two years, participated in discussions regarding prospective employment as a dispute resolution neutral. He was therefore disqualified from the case, regardless of his lack of knowledge of the law providing for his disqualification. His order compelling arbitration was therefore void.

### 2. *The Good Cause Exception Does Not Apply*

Code of Civil Procedure section 170.3, subdivision (b)(4) provides that, under certain circumstances, prior rulings of a disqualified judge are not to be set aside without good cause. That subdivision states, *"If grounds for disqualification are first learned of or arise* after the judge has made one or more rulings in a proceeding, but before the judge has completed judicial action in a proceeding, the judge shall, unless the disqualification be waived, disqualify himself or herself, but in the absence of good cause the rulings he or she has made up to that time shall not be set aside by the judge who replaces the disqualified judge." (Code Civ. Proc., § 170.3, subd. (b)(4), italics added.) The Bank argues that the trial court erred in not requiring good cause before vacating the order compelling arbitration.

█ The subdivision, by its plain language, does not apply. The grounds for Judge Williams's disqualification consisted of: (1) having, within the past two years, participated in discussions regarding prospective employment as a dispute resolution neutral; and (2) having before him a matter including issues relating to the enforcement of an arbitration agreement. These facts coexisted on February 25, 2004, when the Bank moved to compel arbitration. At this point, the grounds for disqualification both "arose" and were "learned of." The only thing not appreciated by Judge Williams was the *legal* conclusion that, under the law, these facts constituted grounds for disqualification. Code of Civil Procedure section 170.3, subdivision (b)(4), by its

terms, applies only to rulings made prior to the time the grounds for disqualification are first learned of or arise—not rulings made prior to the time the judge became aware of controlling law. As such, the order compelling arbitration was properly vacated in the absence of a showing of good cause.

### 3. The Constitutionality of Code of Civil Procedure Section 170.1, Subdivision (a)(8) Is Not Before This Court

The Bank next contends that Code of Civil Procedure section 170.1, subdivision (a)(8) is unconstitutionally vague. Bank concedes that it never raised the issue before the trial court, but suggests we should review this pure question of law. We decline the invitation.

We are concerned, in this appeal, with Judge House's order vacating the order compelling arbitration and vacating the arbitration award itself. We are not concerned with Judge Williams's order disqualifying himself. Indeed, we cannot be. "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought . . . served within 10 days of . . . notice [to the parties] of the court's order." (Code Civ. Proc., § 170.3, subd. (d).) The proper forum for a challenge to the constitutionality of Code of Civil Procedure section 170.1, subdivision (a)(8) would have been a petition for writ of mandate filed within 10 days of Judge Williams's recusal. It cannot be raised now, months later, on an appeal from an order considering the effects of that recusal.

### 4. The Order Vacating the Arbitration Award Was Premature

As discussed above, the trial court did not err in vacating as void Judge Williams's order compelling arbitration. However, it does not necessarily follow that the arbitration award should also have been vacated. Considering the unique procedural history of this case, as well as the policy interests implicated, we conclude the matter should be remanded to the trial court for further proceedings.

■ "[A] disqualified judge has no power to act in any proceedings after his or her disqualification." (*Christie v. City of El Centro, supra,* 135 Cal.App.4th 767, 776.) In this case, Judge Williams lacked the power to act once the motion to compel arbitration was before him. His order compelling arbitration was therefore void. But there were substantial proceedings that occurred after Judge Williams's disqualification—the arbitration itself—that

took place without Judge Williams's participation. We therefore question whether the arbitration proceedings must be vacated based solely on the fact that the order compelling arbitration was the void act of a disqualified judge.

Ross argues that since the arbitration arose as a result of Judge Williams's void order compelling arbitration, the arbitration award must also be void. The conclusion does not follow. *If* the parties were required to arbitrate their dispute, they were required to do so because of an arbitration clause that existed *independently* of Judge Williams's order.[18] *If* that arbitration clause governs the parties' dispute, then the matter should have been arbitrated *regardless of* Judge Williams's order. And if the arbitration was not otherwise tainted by Judge Williams—an issue we discuss below—Judge Williams's disqualification should not mandate the vacation of the arbitration award.

■ We assume, for the moment, that the parties were, in fact, required to arbitrate their dispute. We also assume that Judge Williams had no effect on the arbitration other than ordering that it occur.[19] Under these circumstances, policy considerations compel the conclusion that the arbitration award not be vacated. First and foremost, the policy behind judicial disqualification is not thwarted by allowing an untainted arbitration to stand. "Statutes governing disqualification for cause are intended to ensure public confidence in the judiciary and to protect the right of the litigants to a fair and impartial adjudicator." (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1070 [103 Cal.Rptr.2d 751, 16 P.3d 166].) Public confidence in the judiciary is not undermined by allowing an untainted arbitration to stand. To the contrary, public confidence in the judiciary would be undermined if the court threw out an arbitration award issued by fair and impartial arbitrators, thereby requiring a second arbitration, simply because the judge who initially granted the motion to compel arbitration should not have ruled on the motion. Moreover, this case implicates issues of judicial economy. The arbitration proceedings that were held were lengthy and costly. Principles of judicial economy suggest these proceedings should not be vacated if the proceedings themselves were untainted.[20]

---

[18] That Ross chose to bring his action in court, thereby prompting a petition to compel arbitration, does not undermine the fact that his obligation to arbitrate—if, indeed, there was such an obligation—arose from the contract.

[19] Judge Williams played no part in the selection of the individual arbitrators, the use of JAMS, or the choice of arbitration over judicial reference.

[20] We note that considerations of judicial economy are not completely overlooked in cases of disqualification. Code of Civil Procedure section 170.3, subdivision (b)(4)'s use of a good faith standard before setting aside certain orders of a disqualified judge allows such orders to stand when there is no reason to believe the judge's disqualification impacted the judge's decisionmaking.

We next consider the procedures that must be followed by the trial court in order to determine whether the parties were, in fact, required to arbitrate their dispute and also whether the arbitration was, in fact, tainted by Judge Williams. Judge Williams's disqualification arose on February 25, 2004, when the Bank moved to compel arbitration. At that time, had Judge Williams disqualified himself, the motion would have been heard by another trial judge. We conclude that, on remand, the trial court must consider the motion to compel arbitration which was heard by Judge Williams, and decide whether the causes of action in the then pending complaint should be resolved by arbitration. This is the circumstance that would have occurred had Judge Williams properly disqualified himself at the time.

We note that, at the time Judge House granted the motion to vacate the arbitration award, Ross had pending a motion to file a first amended complaint—one which omits references to several of the contracts on which Ross initially brought suit. Judge House declined to rule on the motion, stating that it was "premature" to consider the issue, as, if there is a subsequent arbitration, it may be that the issue of an amendment to the pleadings would be a matter for the arbitrator to decide. After Judge House granted the motion to vacate the arbitration award, Ross filed his first amended complaint without having been granted leave to do so. It appears that Ross is attempting to avoid a second adverse ruling on the motion to compel arbitration by relying on an amended complaint, rather than the allegations of his original complaint. While such a matter would be for the trial court to resolve in the first instance, we question the propriety of such apparent gamesmanship. As a result of Judge Williams's disqualification, Ross is entitled to a new determination, by a new judge, of the Bank's February 2004 motion to compel arbitration. This does not entitle Ross to amend his complaint and try a whole new litigation strategy in light of his initial lack of success.[21] Judge Williams's disqualification to rule on matters regarding arbitration voids his order compelling arbitration and entitles the parties to a reconsideration of that motion before a new judge, no more.

Should the trial court conclude the motion to compel should be granted, the next step will be to determine whether the arbitration which has already

---

[21] Ross relies on *Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 60 [16 Cal.Rptr.3d 687], for the purported proposition that, when an order compelling arbitration is vacated for any reason, in reconsidering whether an arbitration should occur, the trial court must consider the motion in light of the facts and circumstances existing at the time the motion to compel is reconsidered. *Malek* says no such thing. In *Malek*, the trial court granted a motion to compel arbitration. A change in the law then rendered the arbitration clause unenforceable. The court subsequently reconsidered its own order granting the motion to compel arbitration, in light of the change in law. *Malek* stands only for the unremarkable proposition that a change in law may require a trial court to reconsider its ruling, not that new facts must be considered when a judge's disqualification mandates reconsideration of a motion.

occurred should be given legal effect. In this respect, the appropriate course would be for the parties to move ahead with their cross-petitions to vacate and confirm the arbitration award, with the parties allowed further briefing to discuss whether the award was tainted by Judge Williams.[22] In this case, we believe the appropriate standard is whether "[a] person aware of the facts might reasonably entertain a doubt that the [arbitrators] would be able to be impartial." (Code Civ. Proc., § 170.1, subd. (a)(6)(A)(iii); cf. *Christie v. City of El Centro, supra*, 135 Cal.App.4th 767, 776 [where first judge was disqualified due to the filing of a peremptory challenge, second judge who consulted with first judge after the first judge's disqualification was also disqualified as the conversation gave rise to a doubt as to his impartiality].) Only if the trial court concludes that the arbitration was tainted by Judge Williams, or should be vacated on other grounds, should the trial court vacate the arbitration award.

We note that we are not indicating that Judge Williams's order compelling arbitration should be upheld if it is determined that Judge Williams acted correctly when he granted the motion to compel arbitration. The law is clear that a disqualified judge's orders are void, regardless of whether they happen to have been legally correct. (*Cadenasso v. Bank of Italy, supra*, 214 Cal. at pp. 568–569.) We are instead holding that, when the *only* act of the disqualified judge was to send the parties to an alternative process in which the disqualified judge had no input whatsoever, the result of the alternative process should not be vacated solely by virtue of the judge's disqualification. Upon remand, the trial court should hear and decide anew the original motion to compel, without any consideration of or regard for Judge Williams's prior ruling thereon. If the court grants the motion to compel, then it should proceed to hear and decide the pending cross-petitions to confirm and vacate the arbitration award after considering such supplemental evidentiary matters and argument that the court may deem appropriate in light of the views expressed herein.

---

[22] At oral argument on the appeal, we asked the parties whether Judge Williams had any effect on the arbitration at all, beyond ordering that it take place. Ross has filed supplemental briefing indicating that the Bank submitted the transcripts of the two hearings before Judge Williams to the arbitrators, which placed before the arbitrators Judge Williams's opinions on whether New York law applied (an issue on which Ross prevailed, by agreement of the parties, in the arbitration), whether the contract was unconscionable, and whether the matter should be arbitrated. There is no indication in the record before us that the arbitrators were *influenced* by Judge Williams's opinion on any matter other than the arbitrability of the dispute. As the determination of arbitrability is a purely judicial task, the arbitrators were correct to yield to Judge Williams on this point. (*Malek v. Blue Cross of California, supra*, 121 Cal.App.4th at p. 56.) It appears that we cannot determine whether the arbitration was tainted as a matter of law, and we therefore remand to the trial court to resolve the matter in the first instance.

## *DISPOSITION*

The trial court's order vacating the arbitration award is reversed and the case remanded for further proceedings consistent with the views expressed in this opinion. Each party is to bear its own costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied May 11, 2007, and the opinion was modified to read as printed above. Respondents' petition for review by the Supreme Court was denied July 11, 2007, S153109. Chin, J., did not participate therein.