[No. G041231. Fourth Dist., Div. Three. Nov. 30, 2009.]

JUSTIN BATES et al., Plaintiffs and Respondents, v.
RUBIO'S RESTAURANTS, INC., Defendant and Appellant.

KERRY O. BARTLETT et al., Plaintiffs and Respondents, v.
RUBIO'S RESTAURANTS, INC., Defendant and Appellant.

## COUNSEL

Irell & Manella, Gregory R. Smith, Andra Barmash Greene and Julie M. Davis for Defendant and Appellant.

Righetti Law Firm, Matthew Righetti, John Glugoski; McInerney & Jones, Kevin J. McInerney, Kelly McInerney and Charles A. Jones for Plaintiffs and Respondents.

## OPINION

**MOORE, J.**—The parties in this wage and hour class action litigation entered into a $7.5 million settlement agreement, providing for three payments of $2.5 million to approved class members. After the initial $2.5 million payment was distributed among 529 approved class members, defendant and appellant Rubio's Restaurants, Inc. (Rubio's) realized it had not provided the names of all potential class members to the settlement administrator. One hundred forty potential class members had not received notification of the settlement.

After postjudgment briefing and status conferences, the court ruled that the 140 late-identified class members should receive notice and be folded into the settlement agreement. Later, the judge reconsidered his ruling sua sponte and vacated it. In the same minute order, the judge, citing Code of Civil Procedure section 170.1, subdivision (a)(6)(A)(i), then recused himself from any further proceedings in the matter, in the interests of justice.

Named plaintiffs Kerry O. Bartlett (Bartlett) and Justin Bates (Bates), the respondents herein, contend the appeal must be dismissed as taken from a nonappealable order. We reject this contention. The order in question is a postjudgment order from which an appeal may be taken. (Code Civ. Proc., § 904.1, subd. (a)(2).)

Where the merits of the appeal are concerned, Rubio's contends that inasmuch as the judge was disqualified from hearing the matter, he did not have the authority to reconsider and vacate his ruling with respect to the treatment of the 140 late-identified class members. In other words, Rubio's wants the earlier ruling concerning those persons to stand. However, the judge did not, as Rubio's suggests, simultaneously disqualify himself and vacate his prior ruling. Rather, the judge undertook a sequential process.

First, he reconsidered his ruling with respect to the 140 late-identified class members, and chose to vacate that ruling. Second, having both ruled and "unruled," so to speak, with respect to those persons, the judge chose to recuse himself in the interests of justice. He had the authority to do so and his actions were not improper just because both rulings were contained within the body of a single minute order.

A judge, when taking actions sequentially, is not required to issue a separate minute order with respect to each respective action, and to file the minute orders one at a time. More specifically, if a judge makes one ruling in a case and thereafter chooses to recuse himself or herself from taking further action, he or she is not retroactively disqualified from taking the former action solely because both rulings are contained in one minute order. If the judge were disqualified under the law at the time he or she made the first ruling, that would be another thing altogether. But when the judge is not disqualified at the time of making the first ruling, the first ruling does not become void just because the judge later disqualifies himself or herself in the interests of justice and encapsulates both rulings in one minute order.

We also reject the secondary argument of Rubio's that the order vacating the prior ruling about the 140 late-identified class members must be reversed because the judge erred in his reasoning. Rubio's has failed to address the judge's power to reconsider his own orders sua sponte and has failed to address the standard of review on appeal. The two-part order appealed from is affirmed in its entirety.

I

FACTS

Bartlett and Bates commenced wage and hour class action lawsuits against Rubio's in 2001, and the lawsuits were later consolidated. A class action settlement was reached in March 2007. Under the terms of the settlement agreement, Rubio's agreed to pay a total of $7.5 million, in three $2.5 million payments. The monies were to be paid to two sets of class members, comprised of assistant managers and general managers.

In April 2007, Rubio's sent the settlement administrator a list identifying 865 potential class members. The settlement administrator then notified those persons of their rights under the settlement agreement. Five hundred twenty-nine persons submitted valid claims, including 508 persons who had received

notice from the settlement administrator and 21 who had not received notice but who nonetheless had learned of the settlement and had demonstrated their status as eligible class members.

In June 2007, the court, by judgment, approved the settlement agreement. The judgment stated in part: "This Court will have continuing jurisdiction over this matter until all obligations outlined in the Settlement Agreement have been complied with and thereafter if any issues pertaining to this case and/or settlement arise."

Rubio's made the first $2.5 million payment, and the monies were disbursed to the class members holding valid claims. The problems arose thereafter when, in December 2007, Rubio's learned that it had omitted 161 names from the list of potential class members it had delivered to the settlement administrator in April. Twenty-one of those persons had already identified themselves to the settlement administrator and were already participating in the settlement. The treatment of the remaining 140 persons vis-à-vis the settlement agreement is now at issue, albeit in a circuitous way.

The parties having been unsuccessful in reaching agreement as to how to handle the matter, Rubio's, in May 2008, informed the court of the problem. It also alerted the court to the fact that the second $2.5 million payment was coming due in December 2008. The court held multiple status conferences on the matter and asked the parties for briefing.

At the September 5, 2008 status conference, the court ruled that the 140 late-identified class members would be included in the settlement, and that they would be given notice of the settlement and a chance to opt out. The court also ruled that additional notice would be given to the existing 529 participants, who would be given an opportunity to opt out, upon repayment of the money they had received. The court then ordered counsel for Rubio's to prepare the order, but no formal order was signed.

On October 7, 2008, Bartlett and Bates filed a motion for reconsideration, or in the alternative, a request to recuse the judge pursuant to Code of Civil Procedure section 170.6 and a request to be relieved as class counsel for the 140 late-identified class members. The court took the motion under submission on October 24, 2008.

The first page of the three-page minute order dated October 27, 2008, stated that the court had considered the oral and written arguments of the

parties, and ruled as stated on the attached ruling. The attached ruling, constituting the second and third pages of the minute order, stated in part, under paragraph No. 1, "(a) On its own motion *sua sponte* pursuant to the holding in *Le Francois v. [Goel* (2005)] 35 Cal.4th 1094, 1108 [29 Cal.Rptr.3d 249, 112 P.3d 636] . . . the Court will reconsider the oral ruling of 5 September 2008. [¶] (b) Upon reconsideration, the Court's ruling of 5 September 2008 is <u>vacated</u>." Under paragraph No. 2, the court stated: "The Court has stricken the C.C.P. § 170.6 filed by counsel for the Plaintiff as being untimely. While this Court does not consider itself prejudiced against any party or attorney in this proceeding, in the interests of justice under C.C.P. § 170.1(a)(6)(A)(i) the Court hereby recuses itself." The first page of the minute order, after the direction to see the attached ruling, states: "The Court recuses itself for the following reason: pursuant to C.C.P. § 170.1(a)(6)(A)(i). [¶] This matter is transferred to Department CX101 for reassignment purposes only."

Rubio's filed a notice of appeal from the October 27, 2008 minute order, challenging the portion of the order vacating the September 5, 2008 ruling about the treatment of the 140 late-identified class members. It also filed a motion to augment the record on appeal. Bartlett and Bates filed a motion to dismiss.

## II

## DISCUSSION

### A. *Preliminary Matters*

#### (1) *Motion to augment*

Rubio's seeks to augment the record with copies of a motion to stay disbursement of settlement funds pending appeal, an opposition thereto and a reply, a number of attorney declarations, and a December 18, 2008 reporter's transcript. The documents were all dated after the date of the notice of appeal. No objection to the motion having been filed, the motion is granted. (Cal. Rules of Court, rule 8.155.) The appendix submitted in conjunction with the motion to augment shall be deemed a part of the record on appeal.

#### (2) *Motion to dismiss*

Bartlett and Bates assert that Rubio's is endeavoring to take an appeal from a nonappealable order. They characterize the appeal as being from a mere order after a status conference, not an appealable postjudgment order. We disagree.

■ Code of Civil Procedure section 904.1, subdivision (a)(2) permits an appeal to be taken from a postjudgment order. However, "[d]espite the inclusive language of [that statute], not every postjudgment order that follows a final appealable judgment is appealable. To be appealable, a postjudgment order must satisfy two additional requirements." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651 [25 Cal.Rptr.2d 109, 863 P.2d 179], fn. omitted (*Lakin*).) "The first requirement . . . is that the issues raised by the appeal from the order must be different from those arising from an appeal from the judgment. [Citation.] 'The reason for this general rule is that to allow the appeal from [an order raising the same issues as those raised by the judgment] would have the effect of allowing two appeals from the same ruling and might in some cases permit circumvention of the time limitations for appealing from the judgment.' [Citation.]" (*Ibid.*) "The second requirement . . . is that 'the order must either affect the judgment or relate to it by enforcing it or staying its execution.' [Citation.] Under this rule, a postjudgment order that does 'not affect the judgment or relate to its enforcement [is] not appealable . . . .' [Citation.]" (*Id.* at pp. 651–652.)

Here, no one disputes that there is a final judgment, approving the settlement agreement and dismissing the case. In addition, there can be no question that an appeal from the order concerning the treatment of the 140 late-identified class members would be different from an appeal arising from the judgment itself. The order regarding the 140 persons is not contained within the body of the judgment and could not have been challenged in an appeal from the judgment. Finally, there can be no question that the order affects the judgment or relates to it. The order has to do with the interpretation and implementation of the judgment, and the manner in which it is to be enforced. In short, each of the requirements of *Lakin, supra,* 6 Cal.4th 644 is satisfied.

Bartlett and Bates disagree. They assert that the order is merely preliminary to later proceedings—that there will be a later judgment concerning the 140 individuals that will be appealable. In their view, the order belongs to a class of orders "that, although following an earlier judgment, are more accurately understood as being preliminary to a later judgment, at which time they will become ripe for appeal." (*Lakin, supra,* 6 Cal.4th at p. 652.) We are not persuaded.

The court here made an order that the 140 late-identified class members are to be given notice and an opportunity to participate in the settlement and the 529 current participants are to be given notice and an opportunity to opt out

(considering that the addition of the 140 persons would diminish the amount of recovery for the existing 529 participants). The decision on appeal will have the effect of determining whether the order remains in place or not. The order would be in implementation of the existing judgment and not in contemplation of the entry of a second judgment in a lawsuit that has already been dismissed. The motion to dismiss is denied.

B. *Substantive Issues*

(1) *Introduction*

Rubio's wants the October 27, 2008 order reversed to the extent it vacates the court's September 5, 2008 ruling with respect to treatment of the 140 late-identified class members. It makes two arguments to achieve its goal. Its primary argument is that because the judge was disqualified to act, he could not vacate his September 5, 2008 ruling. As a secondary point, Rubio's also argues that the judge's reasoning for overturning the September 5, 2008 ruling was erroneous. We address these issues in turn.

(2) *Effect of disqualification*

First, Rubio's asserts that the judge simultaneously disqualified himself and vacated the September 5, 2008 ruling, although we observe that the record does not support this assertion. Rubio's nonetheless cites three cases in support of its argument that the judge had no power to enter the disqualification and vacation orders at the same time: *Rossco Holdings, Inc. v. Bank of America* (2007) 149 Cal.App.4th 1353 [58 Cal.Rptr.3d 141] (*Rossco*); *Christie v. City of El Centro* (2006) 135 Cal.App.4th 767 [37 Cal.Rptr.3d 718] (*Christie*); and *Geldermann, Inc. v. Bruner* (1991) 229 Cal.App.3d 662 [280 Cal.Rptr. 264] (*Geldermann*). These cases are distinguishable, as we shall show.

In *Rossco, supra,* 149 Cal.App.4th 1353, a trial judge granted a motion to compel arbitration. After the arbitration was completed, one party petitioned to confirm the arbitration award and the other party petitioned to vacate it. (*Id.* at p. 1355.) When these petitions came before the judge, he realized that Code of Civil Procedure section 170.1, subdivision (a)(8), pertaining to judges who have engaged in discussions concerning prospective employment as a dispute resolution neutral, may have required his disqualification to pass upon the motion to compel arbitration. (*Rossco, supra,* 149 Cal.App.4th at pp. 1357–1359.) The judge then disqualified himself, leaving open the question

of whether the ruling he had made on the motion to compel arbitration should stand. (*Id.* at p. 1359.) The appellate court held that the judge already was disqualified from the case when the motion to compel arbitration came before him, irrespective of the fact that he did not realize it at the time, and that his order compelling arbitration was void. (*Id.* at p. 1363.)

■ The *Rossco* court explained: " '[D]isqualification occurs when the facts creating disqualification arise, not when the disqualification is established.' [Citation.] '[I]t is the *fact* of disqualification that controls, not subsequent judicial action on that disqualification.' [Citation.]" (*Rossco, supra,* 149 Cal.App.4th at p. 1363.) It further stated: "Orders made by a disqualified judge are void. [Citations.]" (*Id.* at p. 1362.)

As applied to the matter before us, Rubio's argues that it was no later than the date of the October 27, 2008 order when the facts arose requiring the judge's disqualification, so the judge was disqualified on that date. He could not, on that date, also make a substantive order vacating the September 5, 2008 ruling. Thus, says Rubio's, the order vacating that ruling was void.

Rubio's makes essentially the same arguments based on *Christie, supra,* 135 Cal.App.4th 767. In *Christie,* the first judge assigned to a matter was disqualified on a peremptory challenge. (*Id.* at pp. 772–773.) The second judge, after consulting with the first judge, granted a motion for nonsuit. (*Id.* at pp. 772–774.) A third judge ruled that the second judge already was disqualified, on the basis of the appearance of impropriety, at the time he granted the motion for nonsuit. (*Id.* at p. 774.) The appellate court, in affirming, specifically rejected the argument that the second judge was not disqualified until the third judge granted a motion to disqualify. (*Id.* at p. 776.)

*Christie, supra,* 135 Cal.App.4th 767, as noted at the outset, is distinguishable from the case before us, just as is *Rossco, supra,* 149 Cal.App.4th 1353. In each of those cases, the judge was disqualified at the time he made the order in question, because of factual situations in existence at the time the orders were made. In *Christie,* the judge was disqualified because of communications he had had with another disqualified judge, prior to making the order in question. In *Rossco,* the judge was disqualified because of employment discussions he had undertaken before he made the order in question. In the case before us, however, Rubio's identifies no factual situation that required the disqualification of the judge prior to his order vacating the September 5, 2008 ruling. Rather, the judge, having expressed his opinion

regarding the handling of the 140 late-identified class members, but having later decided the procedural posture of the case did not permit him to make the ruling he did, concluded that, after vacating the September 5, 2008 ruling, the interests of justice would be served if he participated no further. Consequently, after he made a substantive determination on reconsideration, he decided it best to disqualify himself from further activity in the case.

Undaunted, Rubio's says that it matters not how the disqualification arises. Rubio's maintains that even if the judge disqualifies himself or herself in the interests of justice, any other orders he or she makes are void. Rubio's cites *Geldermann, supra*, 229 Cal.App.3d 662 in support of its argument.

In *Geldermann, supra*, 229 Cal.App.3d 662, a judge issued a tentative decision after the conclusion of trial. (*Id.* at p. 663.) Before rendering a final decision, however, the judge entered into an agreement to sell his home to the attorney of one of the parties. The judge subsequently disqualified himself in the matter. (*Id.* at p. 664.) Nearly a month later, the judge rendered judgment. The appellate court held that the judgment was invalid. (*Id.* at p. 665.) It observed: " 'Whenever a judge determines himself or herself to be disqualified, the judge shall . . . not further participate in the proceeding, except as provided in Section 170.4 . . . .' (Code Civ. Proc., § 170.3, subd. (a)(1).) Code of Civil Procedure section 170.4, subdivision (d), provides, 'Except as provided in this section, a disqualified judge shall have no power to act in any proceeding after his or her disqualification or after the filing of a statement of disqualification until the question of his or her disqualification has been determined.' " (*Geldermann, supra*, 229 Cal.App.3d at p. 665.) The court noted that none of the statutory exceptions applied. (*Ibid.*)

 Rubio's correctly observes that the disqualification rules apply whether the judge disqualifies himself or herself in the interests of justice or whether the judge is disqualified for another reason. However, it is clear that once the judge is disqualified, he or she can take no *further* action in the case, unless there is a statutory exception, which is not suggested here. In *Geldermann, supra*, 229 Cal.App.3d 662, as in the other cases Rubio's cites, the judge entered a substantive order after he had been disqualified. That is not the situation in the case before us.

 Here, the judge reconsidered his prior ruling sua sponte. (*Le Francois v. Goel, supra*, 35 Cal.4th at pp. 1107–1108.) At that point, the judge had made two separate rulings affecting the 140 late-identified class members. He then concluded that he should be disqualified in the interests of justice. There are no facts in the record to show that the judge was disqualified as a matter of law at the time he vacated the September 5, 2008 ruling. He disqualified himself only afterward. Consequently, the vacation order is not void.

Rubio's disagrees with the characterization of the October 27, 2008 minute order as involving two temporal components—first an order vacating the September 5, 2008 ruling and second an order disqualifying the judge. Rather, Rubio's says there was only one order, entered at one time in the minutes, and that the two component parts of the order were simultaneous. This argument, taken to logical conclusion, would mean that the judge could have accomplished what he did by two separate orders entered sequentially in the minutes, but not by one. If he had directed the entry of an order vacating the September 5, 2008 ruling, and then separately directed the entry of an order disqualifying himself, the first order would stand. But because he encapsulated all the orders in one minute order, the order vacating the September 5, 2008 order must fail. We cannot agree. The October 27, 2008 minute order contained within its body separate orders in separate paragraphs. The sequential nature of the orders was self-evident.

### (3) *Erroneous trial judge reasoning*

In the October 27, 2008 minute order, the judge noted that the parties had filed no formal motion or stipulation to have the court interpret the settlement agreement, even though the court had held status conferences and received briefing on the matter. On reflection, the judge reasoned that he had no authority, at that stage of the proceedings and given the procedural posture, to order the inclusion of the 140 late-identified class members in the settlement. Rubio's says the judge did in fact have the power to rule as he did, so he erred in his reasoning and the order vacating the September 5, 2008 ruling must be reversed.

Rubio's explains that the parties did stipulate, at least orally, to have the judge make a ruling with respect to the 140 late-identified class members, and that the judge had the authority, under both Code of Civil Procedure section 664.6 and certain case law, to make the order he did. Irrespective of the power of the judge to rule as he did on September 5, 2008, we need to address the power of the judge to reconsider his own ruling and the power of this court to reverse the order entered after such reconsideration. But Rubio's fails to address either the power of the judge in that regard or the standard of review to be applied in this court with respect to an order overturning a prior ruling after reconsideration. This being the case, Rubio's has failed to meet its burden to show reversible error. (*Virtanen v. O'Connell* (2006) 140 Cal.App.4th 688, 709–710 [44 Cal.Rptr.3d 702] [order presumed correct; appellant's burden to show error].)

## III

### DISPOSITION

The January 16, 2009 motion of Rubio's to augment the record on appeal is granted. The March 6, 2009 motion of Bartlett and Bates to dismiss the appeal is denied. The October 27, 2008 order is affirmed in its entirety. Bartlett and Bates shall recover their costs on appeal.

Sills, P. J., and O'Leary, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 24, 2010, S179150. Baxter, J., did not participate therein.