Filed 3/5/26  A.D. v. A.S. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| A.D., | |
| Plaintiff and Respondent, | G064519 |
| v. | (Super. Ct. No. 23P000420) |
| A.S., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Thomas J. Lo, Judge. Affirmed.

Keiter Appellate Law and Mitchell Keiter for Defendant and Appellant.

Holstrom, Block & Parke, Carrie S. Block and Ronald B. Funk for Plaintiff and Respondent.

\*          \*          \*

Appellant A.S. (Father) appeals the trial court's order granting respondent A.D. (Mother) a domestic violence restraining order (DVRO) under the Domestic Violence Prevention Act (Fam. Code, § 6200 et seq.; DVPA). Father argues the court erred by: (1) concluding that his throwing and breaking of inanimate objects supported the granting of a DVRO; (2) excluding certain testimony and evidence; and (3) applying disparate standards to the parties. We disagree. We conclude the court did not abuse its discretion in finding that Father's conduct was sufficient to grant a DVRO.

FACTS

Mother and Father were in a romantic relationship for more than 10 years and share a son, C.S. (Son), who was born in 2015.

On March 24, 2023, Father had an outpatient medical procedure. After the procedure, Father and Mother had an argument, during which Father spit on her. He then told Mother, "I fucking want to hit you right now." She replied, "Do it." Mother did not think that Father would hit her because he had never done so before, although he had told her two or three times previously that he wanted to hit her. Father then "backhanded" Mother on the cheek.

On March 27, 2023, Mother filed a request for a DVRO, which included photographs of her injuries, a declaration describing incidents of abuse, and a police report which documented a red mark on her face. The trial court issued a temporary restraining order and scheduled a hearing.

Mother later filed a parentage petition, a request for order (RFO) regarding visitation and custody, and a supplemental declaration. Both parties filed briefing, evidentiary objections, and discovery motions. The trial court found Father engaged in multiple instances of abusive litigation tactics. For example, Father, a licensed attorney, sought to personally take Mother's

2

deposition. The trial court stayed Father's request, concluding it was "a tactic to harass and intimidate" her. The court also granted Mother's motions to quash subpoenas for her mental health records, concluding the records were privileged and finding the subpoenas were brought in bad faith and for purposes of harassment. Father was ordered to pay $8,000 in attorney fees in relation to Mother's motion to quash.

Prior to the hearing on the request for DVRO, the trial court, noting there had been "some gamesmanship" by Father in prior hearings, excluded the testimony of two of Father's proposed expert witnesses, Drs. Fuller and Liberman, as untimely disclosed. The court granted Mother's request for attorney fees and costs.

Hearings on the request for a DVRO were held between February and June 2024. When Father renewed his request to present his doctor's testimony regarding the effects of his medication, the trial court excluded the testimony as not relevant. The court also denied Father's request to call as witnesses two professional visitation monitors who supervised his visits with Son.

At the hearing, Mother testified that Father broke objects when he was angry, which caused Mother and Son fear and emotional distress. These incidents, which occurred over a years-long period, included: pushing Mother into a doorway after a night of drinking during a trip to New York in 2016; smashing his cell phone in the airport on a trip to Denver for a wedding when he could not connect to a cell phone network in 2018; breaking the glass on a spare microwave in the garage because he was angry his sushi delivery order had avocado on it in 2019; smashing a vacuum against two metal trash cans on Son's fourth birthday; throwing knives at a wall because he was angry and frustrated while cooking dinner in 2019; smashing an iPad within

one to two feet of Mother and Son on a trip to Costa Rica in 2021; throwing Mother's cell phone against the wall because the alarm on her phone woke him up, during which Son tried to get in between Mother and Father; kicking and breaking the laundry basket; closing the door of the linen closet with such force that it caused a dent in the wall; and knocking a timer off a table while angry at Son in 2023. Father also sent Mother a text which stated, "Nothing will ever be as good as breaking things," and if Mother did not like it, she could "find someone else."

At the hearing, Father did not deny breaking or throwing these items but claimed that he accidentally knocked over the timer and that the microwave fell over and broke. Father admitted that he hit Mother but claimed it was a result of the post-surgical medication, which rendered him unable to make conscious decisions.

The trial court made factual findings that Mother's testimony was credible and consistent and that Father was not credible. The court issued a five-year DVRO against Father in Mother's favor. Son was also included in the DVRO as a protected person. The court concluded that Father slapped and spit on Mother and disturbed her mental and emotional calm by repeatedly breaking objects when he was angry. A restraining order against Father was therefore necessary to prevent further acts of abuse. The court granted sole legal and physical custody of Son to Mother with Father allowed professionally monitored visitation of 10 hours per week.

## DISCUSSION

### I.

### THE TRIAL COURT PROPERLY FOUND FATHER'S BREAKING OF INANIMATE OBJECTS CONSTITUTED ABUSE UNDER THE DPVA

Father argues the trial court erred in issuing a DVRO based in

part on his act of breaking inanimate objects. He claims that destruction of property, without more, does not constitute "abuse" within the meaning of the DVPA. We conclude the court properly found that Father's act of breaking objects in anger disturbed Mother's mental and emotional calm and therefore constituted abuse.

## A. Legal Standard

We review an order granting or denying a DVRO for abuse of discretion; in determining whether the trial court's findings are supported by substantial evidence, we accept as true all evidence supporting those findings and resolve every conflict in the evidence in favor of the judgment. (*In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 379.) A court's decisions regarding what evidence to consider in deciding whether to issue a DVRO are also reviewed for abuse of discretion. (*In re Marriage of F.M. & M.M.* (2021) 65 Cal.App.5th 106, 115.)

## B. Discussion

Throwing or destroying inanimate objects may be considered evidence of abuse under the DVPA. The Family Code provides that a court may issue a DVRO to enjoin a party from various acts of both physical and nonphysical abuse, including "harassing, telephoning, . . . *destroying personal property*, contacting, either directly or indirectly, by mail or otherwise, coming within a specified distance of, or *disturbing the peace of the other party*." (Fam. Code, § 6320, subd. (a) (italics added).)

Courts "broadly construe[]" the terms of the DVPA to accomplish its purpose in preventing domestic violence. (*In re Marriage of Nadkarni* (2009) 173 Cal.App.4th 1483, 1498 (*Nadkarni*).) Thus, the term "disturbing the peace of the other party" in Family Code section 6320 has been interpreted broadly to include not just physical abuse but also conduct that

5

"destroy[s] the mental or emotional calm" of that person. (*Nadkarni, supra,* at p. 1498.)

The evidence adduced at the hearing established that Father "destroy[ed] personal property." (Fam. Code, § 6320, subd. (a).) Mother testified that when he was angry, Father broke multiple objects, including an iPad, microwave, vacuum, cell phone, trashcan, and laundry basket. She also testified he threw or slammed other objects in anger, including Mother's cell phone, a door, a timer, and knives.

The evidence also established that Father's acts of throwing or destroying objects in anger over a years-long period "destroy[ed] [Mother's] mental or emotional calm." (*Nadkarni, supra,* 173 Cal.App.4th at p. 1498.) Mother testified that these acts left her emotionally shaken and fearful of further escalation. She also testified that Son became visibly distressed in response to Father's actions.

Under similar circumstances, courts have concluded that throwing and destroying objects constituted substantial evidence which supported the issuance of a DVRO. (See, e.g., *Br. C. v. Be. C.* (2024) 101 Cal.App.5th 259, 269 [husband's acts of abuse included, *inter alia*, "slam[ming] and throw[ing] objects on a daily basis"]; *In re Marriage of Fajota* (2014) 230 Cal.App.4th 1487, 1490) [husband committed acts of domestic violence against his wife, including throwing things and destroying her belongings].) As in *Br. C.* and *Fajota*, the trial court reasonably concluded that Father's acts of throwing and breaking inanimate objects in anger in Mother's (and Son's) presence over the course of multiple years "destroy[ed] [her] mental or emotional calm" and thus constituted abuse under Family Code section 6320.

## II.

### ANY ERROR IN EXCLUDING FATHER'S PROFFERED EVIDENCE WAS HARMLESS GIVEN THE SUBSTANTIAL EVIDENCE OF ABUSE

Father argues the trial court erred in excluding evidence which deprived him of the due process right to a fair hearing. We conclude the court did not abuse its discretion by excluding as not relevant certain testimony regarding Mother's credibility and other "contextual" evidence. Furthermore, although proposed testimony by Father's doctor regarding the effects of his medication and the testimony by a professional visitation monitor regarding Father's interactions with Son were relevant, any error in excluding this evidence was harmless given the substantial evidence of abuse.

### A. Legal Standard

"The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) "Unquestionably, the trial court has the power to . . . exclude proffered evidence that is deemed to be irrelevant, prejudicial or cumulative and expedite proceedings which, in the court's view, are dragging on too long without significantly aiding the trier of fact." (*In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291.)

The trial court's exclusion of evidence is reviewed for an abuse of discretion and is not cause for reversal absent a miscarriage of justice. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*).)

*B.  Discussion*

      1.     Evidence Related to Mother's Credibility

Father contends the trial court abused its discretion in excluding evidence related to Mother's credibility, including allegations of drinking, aggression toward Father, and commission of forgery and insurance fraud. Father also sought to introduce a text message in which Mother told Father she loved him the day before he hit her.

      a.     Evidence of Drinking

Mother testified that Father had been drinking when he broke the vacuum against the trash can. She further stated that she does not drink. The court sustained an objection on relevance grounds when Mother was asked on cross-examination whether she had been drinking during the incident in which she alleged Father pushed her into a doorway in New York. Later, Father's attorney asked him if he had "concerns" about Mother's "history of drinking." The court sustained an objection based in part on grounds of relevance, finding it to be "an improper question."

      Mother's use of alcohol was not relevant to determining whether to grant a DVRO. The DRVO was based primarily upon Father disturbing Mother's emotional and mental peace by throwing and destroying objects and Father's act of hitting Mother. There was no offer of proof Mother had consumed alcohol at the time any of these incidents occurred or that her alcohol use had any connection to Father's actions.

      b.     Evidence of Aggression

After Mother testified that Father threw objects when angry, Father sought to testify Mother also threw things at him. When the trial court asked why this evidence was relevant, Father's counsel stated that it

8

showed they had a "volatile relationship." The court stated, "That's not a defense. That's not relevant."

As with Mother's alleged drinking, whether she threw things at Father was not relevant to determining whether she was entitled to a DVRO. There was no offer of proof that Father threw objects or hit Mother in self-defense or in response to her aggression.

### c. Evidence of Forgery and Insurance Fraud

Father sought to impeach Mother's credibility with deposition testimony in which she allegedly disclosed she had committed forgery and insurance fraud. The trial court excluded this evidence on various grounds, including relevance.

As with the other grounds for impeachment, whether Mother had committed forgery or insurance fraud was not relevant to the central issue, which was whether Mother was entitled to a DVRO against Father based on his acts of throwing and destroying objects and hitting Mother. It might be relevant if Father denied hitting Mother and argued she was lying about the abuse, but he admitted that he slapped her. Moreover, this testimony was properly excluded as inadmissible character evidence. Except under limited exceptions not applicable here, evidence of a person's character is not admissible when offered to prove conduct in conformity therewith. (Evid. Code, § 1101.)

### d. Text Message

Father sought to introduce a text message Mother sent him on March 23, 2023, the day before he hit her, in which she stated, "I love you." Father offered the text message as evidence that Mother was not actually fearful of Father and therefore there was no need for a DVRO. The court excluded the text message as not relevant.

9

The trial court properly excluded the text message. Because it was sent the day before Father hit Mother, it was largely irrelevant to assessing whether she feared Father *afterward*. Moreover, whether Mother loved Father was immaterial to determining whether to issue a DVRO based on his long history of disturbing her mental and emotional peace by throwing and destroying objects.

2.    Contextual Evidence

Father contends the trial court erred in excluding certain "contextual evidence" which would have explained his conduct, including: (1) Mother was in a different room when he broke the microwave and he therefore did not intend to physically harm her; (2) Son was distressed by a COVID test, not Father's behavior; and (3) the kitchen timer fell off the table accidentally, not because Father purposefully threw it.

During cross-examination, Father sought to show that Mother was not in harm's way when the microwave broke because she was in the kitchen while he was in the garage. Mother was asked how long the hallway is that leads from the kitchen to the garage. The trial court excluded the testimony regarding the distance between the kitchen and garage as not relevant because Mother was aware Father was breaking an object even though she was not in the same room.

Mother testified Father smashed an iPad in Son's presence during a trip to Costa Rica, which caused Son emotional distress. Father sought to show that Son was upset by having to take a COVID test, rather than by Father breaking the iPad. The trial court sustained an objection to the question, noting, "That doesn't make the smashing of the iPod or iPad acceptable. I mean, [Son] may have been upset at both. So it's not really relevant."

10

On cross-examination, Father was asked if he "admit[ted] [he] knocked down the Kleenex box and the timer." Father stated he "carelessly knocked them over." Counsel moved to strike Father's answer as nonresponsive, which the court granted. Counsel again asked if he admitted knocking the objects off the table. Father replied, "Accidentally." Counsel again moved to strike, which was granted. The court told Father he "need[ed] to answer the question." Father then said, "Yes."

As with the other evidence discussed above, this "contextual" testimony was marginally relevant and would likely necessitate undue consumption of time. The trial court therefore did not abuse its discretion in excluding it under Evidence Code section 352.

3.　　Doctor's Testimony

During the hearing on the DVRO, Father argued that he was "not capable of complete, rational thought" on the day of his medical procedure because he was "under the influence of some very significant narcotics," including propofol, ketamine, and fentanyl. Father therefore sought to introduce the testimony of Dr. Fuller, an anesthesiologist, to support his contention that he was not responsible for his actions when he slapped Mother. Father argued he should be allowed to present evidence that could tend to "mitigat[e]" the extent of the risk he posed to Mother and to demonstrate this was a singular event which was unlikely to recur. The trial court excluded Dr. Fuller's testimony as speculative and irrelevant.

Dr. Fuller's testimony was arguably relevant to determining whether Father was able to control his actions at the time he hit Mother and whether any physical abuse was likely to recur. However, even if the trial court erred in excluding this evidence, any error was harmless given the substantial evidence of abuse. Exclusion of evidence is reviewed for an abuse

11

of discretion and is not cause for reversal absent a miscarriage of justice. (*Watson*, *supra*, 46 Cal.2d at p. 836.) There was substantial evidence adduced at the hearing that Father threw and broke objects in anger over a years-long period, which disturbed Mother's emotional and mental calm. Therefore, even if the trial court had admitted Dr. Fuller's testimony, it would not likely have changed the outcome.

### 4. Exclusion of Visitation Monitors' Testimony

Father sought to introduce testimony of two professional visitation monitors who observed his interactions with Son, contending the testimony was relevant to determining whether the DVRO should also apply to Son. The trial court excluded the testimony as cumulative and irrelevant to determining whether a DVRO should issue, noting the testimony would only "be relevant to the custody and parenting time orders."

The testimony of the visitation monitors would arguably be relevant because it would show that Son did not fear Father during their supervised visitation and therefore Son did not need to be included as a person protected by the DVRO. However, as with Dr. Fuller's testimony, any error in excluding this evidence was harmless given the substantial evidence of abuse. Furthermore, Mother testified that Son was present for some of the incidents in which Father broke inanimate objects, including smashing an iPad and throwing a timer off a table, and that he had become emotionally distressed in response, which was evidence that supported including Son as a person protected by the DVRO.

### III.

### THE TRIAL COURT DID NOT DEMONSTRATE BIAS

Father argues the trial court's alleged evidentiary errors demonstrate bias. He claims the court showed bias by admitting unfavorable

evidence of his conduct, while excluding evidence which could be used to impeach Mother's credibility. In support, he points to the court's evidentiary rulings, particularly its exclusion of Dr. Fuller's and the professional monitors' testimony, evidence of Mother's aggression toward Father, and testimony regarding the distance from the garage to the kitchen.

A trial court's rulings against a party do not alone establish judicial bias. (*People v. Farley* (2009) 46 Cal.4th 1053, 1110.) Although Father clearly disagrees with the reasons the court stated for excluding evidence he sought to introduce, "[w]e will not hold that every statement a judge makes to explain his or her reasons for ruling against a party constitutes evidence of judicial bias." (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1219.)

Furthermore, we have reviewed the record and found nothing that suggests "a reasonable person would entertain doubts concerning the judge's impartiality" (*Christie v. City of El Centro* (2006) 135 Cal.App.4th 767, 776) or that "'would cause us to lack confidence in the fairness of the proceedings such as would necessitate reversal.'" (*Haluck v. Ricoh Electronics, Inc.* (2007) 151 Cal.App.4th 994, 1008.) The trial court made reasonable evidentiary rulings to exclude irrelevant evidence and maintain control over its proceedings, which does not constitute judicial bias.

## DISPOSITION

The trial court's order granting the DVRO is affirmed. Mother is entitled to recover her costs on appeal.


SANCHEZ, ACTING P. J.

WE CONCUR:


GOODING, J.


BANCROFT, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.