Filed 3/17/26  Manriquez-Gonzales v. Impact Logistics CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| ROBERT MANRIQUEZ-GONZALES et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> IMPACT LOGISTICS, INC., <br><br> Defendant and Appellant. | D087141, D087142, D087143 <br><br><br> (Super. Ct. Nos. CIVSB2404778, CIVSB2408159, CIVSB2417326) |


CONSOLIDATED APPEALS from orders of the Superior Court of San Bernardino County, Wilfred J. Schneider, Jr., and Donald R. Alvarez, Judges.  Affirmed.

O'Hagan Meyer, Katherine C. Den Bleyker, and Tatyana Esmailian for Defendant and Appellant.

Wilshire Law Firm, Benjamin H. Haber, Daniel J. Kramer, Chase M. Stern, and Angela Leong for Plaintiff and Respondent Robert Manriquez-Gonzales.

Lavi & Ebrahimian, Joseph Lavi, and Jordan D. Bello, for Plaintiff and Respondent Marcus Munoz.

1

Impact Logistics, Inc. (Impact) appeals from three orders denying its motions to compel arbitration of two separate employment class actions and a Private Attorney General Act (PAGA) action (Lab. Code, § 2698 et seq.) brought against it by Robert Manriquez-Gonzales and Marcus Munoz (collectively, plaintiffs), who each previously worked for Impact. Impact argues the trial courts below should have compelled arbitration under the terms of what it asserts is a valid arbitration agreement signed by each plaintiff. We conclude that the courts correctly denied Impact's motions because the record supports their findings that Impact failed to carry its ultimate burden of proving the existence of an agreement to arbitrate in all three cases. We therefore affirm the orders.

## FACTUAL AND PROCEDURAL BACKGROUND

Manriquez-Gonzales and Munoz worked as freight handlers for Impact, a "labor provider" in the transportation industry headquartered in Tennessee, with an office in Ontario, California.

### A. *Manriquez-Gonzales's Onboarding*

Manriquez-Gonzales worked for Impact from December 2019 to November 2022. According to a declaration by Tara Mullins, a workers' compensation claims coordinator who works for Impact in Mississippi, as part of Manriquez-Gonzales's first three onboarding processes in December 2019, August 2020, and February 2021, he "was provided a Spanish version" of a document titled "Mutual Agreement to Arbitrate Claims" (Agreement) to review and sign. She based this conclusion solely on her review of his personnel file. Mullins's declaration stated that Manriquez-Gonzales signed and dated the Spanish version of the Agreement during those onboardings. It also stated that he signed the English version of the Agreement in March 2020 after being provided a copy of the Spanish version to review.

Mullins's declaration attached the English and Spanish versions of the Agreement, along with separate signature pages, from Manriquez-Gonzales's personnel file "where [they were] placed in accordance with [Impact's] employment policies and practice." In both versions of the Agreement, each page is stamped with "Rev. 20240319" in the lower right corner. Each of the four signature pages bears the signatures of "Robert Manriquez" and "Angelina Dominguez," who had the title of "HR Director." Each of the signature pages from December 2019, August 2020, and February 2021, is on a page by itself stamped with a "Rev." number beginning with "2019," "2020," and "2020" respectively. The signature page dated March 2020 appears to be on the same page as paragraph 14 of the English version of the Agreement,

3

but the bottom right corner of that signature page is stamped with a "Rev." number starting with "2020."

Manriquez-Gonzales submitted a declaration stating that he did not recognize, and had no recollection of receiving, the English and Spanish versions of the Agreement attached to Mullins's declaration. He stated that he did not believe he "actually received or signed" the arbitration documents. He "went through a quick onboarding process" where he was required to sign various documents, but he did not receive copies of any of them. According to his declaration, neither Mullins nor anyone at Impact ever explained to Manriquez-Gonzales what he was being asked to sign.

B. *Munoz's Onboarding*

Munoz worked for Impact from approximately March 2022 to November 2023. According to a separate declaration by Mullins, based on her review of Munoz's personnel file, Munoz was provided with the Spanish version of the Agreement during his onboarding in March 2020. Mullins's declaration attached the English and Spanish versions of the Agreement, along with a separate signature page from Munoz's personnel file "where it was placed in accordance with [Impact's] employment policies and practices." As with Manriquez-Gonzales's file, the pages in both versions of the Agreement are stamped with "Rev. 20240319" in the lower right corner. The signature page is on its own page and bears the signatures of "Marcus Munoz" and "Angelina Dominguez," with the title of "HR Director." The page is stamped with "Rev. 20220207" in the bottom right corner.

Munoz submitted a declaration in which he stated that during his orientation, a Hispanic male employee of Impact required him to sign and complete six or seven documents in order to work there. He believed that the page bearing his signature was one of those documents, but he expressed

4

uncertainty about whether the pages of the Agreement were attached to his signature page because of the differences in the stamped numbers.

### C. Class Action and PAGA Lawsuits

In February 2024, Manriquez-Gonzales filed a class action complaint against Impact for its alleged failure to pay minimum, straight time, overtime, and timely final wages; failure to give meal and rest periods; failure to provide accurate itemized wage statements; and failure to indemnify employees for expenditures. Manriquez-Gonzales asserted these claims under provisions of the Labor Code, including under PAGA and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.).

Munoz, represented by different counsel than Manriquez-Gonzales, filed a class action in March 2024 alleging largely the same claims as Manriquez-Gonzales, but he also filed a separate PAGA action in May 2024.

### D. Motions to Compel Arbitration

Impact filed motions to compel arbitration under the Agreement in each of the three cases, attaching declarations from Mullins and Impact's counsel. Impact argued, among other things, that the agreements between Impact and plaintiffs were valid and enforceable, encompassed each of the claims asserted by plaintiffs, and required arbitration of those claims on an individual basis.

Manriquez-Gonzales and Munoz each opposed the motions and objected to Mullins's declarations and their attachments on several grounds including hearsay, foundation, personal knowledge, and authentication. Munoz specifically argued in his opposition that Impact failed to include a certified English translation with the Spanish version of the Agreement attached to

5

Mullins's declaration, in violation of California Rules of Court,[1] rule 3.1110(g).

In reply, Impact submitted supplemental declarations from Mullins in support of Impact's motions to compel arbitration in Munoz's cases. Mullins's supplemental declarations stated that she had been in her current position at Impact for "nine and a half years" and that she is "knowledgeable about the onboarding process for new and rehired employees" at Impact. The declarations said that "per [Impact's] policy and practice for onboarding employees," Munoz was provided a Spanish version of the Agreement to review and sign in March 2022. Mullins stated in her supplemental declarations that it is Impact's "business practice to stamp a revision number on the entirety of the new hire packet each time the packet (which contains various onboarding documents for new and rehired employees" is updated. However, neither [Impact's] employee handbook nor the arbitration agreement has been updated since at least 2019, and "both have remained the same throughout the duration" of Munoz's employment with Impact. According to Mullins, the Agreement and Munoz's signature page "both belong to the same version of the document, despite the different revision numbers, which was given to [Munoz] at the time of his onboarding." She also attached a certified English translation of the Spanish version of the Agreement.

Judge Wilfred J. Schneider, Jr., held hearings on Impact's motions in Manriquez-Gonzales's and Munoz's class action suits. Judge Donald R. Alvarez held a hearing on Impact's motion in Munoz's PAGA suit. Both trial court judges denied all of Impact's motions and sustained most of plaintiffs'

---

[1] Undesignated rule references are to the California Rules of Court.

objections to Mullins's declarations, ruling that Impact had failed to meet its burden of proving the existence of a valid arbitration agreement.

Impact filed a motion for reconsideration in Manriquez-Gonzales's case, which Judge Schneider denied.[2]

---

[2] Impact has not challenged the court's denial of its motion for reconsideration on appeal.

DISCUSSION

Impact argues on appeal that: (1) the trial courts erred in sustaining objections to Mullins's declarations; (2) plaintiffs failed to meet their burden of producing evidence to dispute the existence of the arbitration agreements; (3) even if plaintiffs presented adequate evidence to contest the agreements, Impact met its burden of showing a valid agreement to arbitrate exists; and (4) plaintiffs' argument that they are exempted from federal arbitration law has no merit. For the reasons discussed below, we conclude that the courts below did not abuse their discretion in sustaining plaintiffs' evidentiary objections. We also conclude the courts committed no error in deciding that Impact failed to carry its ultimate burden of proving the existence of agreements to arbitrate. Given our conclusion, we need not and do not address Impact's arguments regarding federal arbitration law. Accordingly, we affirm.

I

We first address the trial courts' evidentiary rulings because a court's analysis of whether an arbitration agreement exists depends on the evidence before it. "We review the superior court's evidentiary rulings for abuse of discretion." (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 255.)

Impact asserts that Mullins had personal knowledge about the signing of the Agreements even though she does not work in California and was not present for plaintiffs' onboardings. In support of its argument, Impact cites unpublished superior court cases in which courts found arbitration agreements were properly authenticated when the declaring witness was "familiar with" or "privy to" the employer's record-keeping and onboarding processes. Impact also cites published cases recognizing that normal

procedures of document authentication need not apply for purposes of a petition to compel arbitration, and that a witness need only be familiar with the procedures followed to establish the business records exception. (See *Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1062 (*Espejo*) [concluding that a declaration, detailing how an electronic signature "could have only been placed on the signature pages" by someone using the employee's "unique user name and password," was sufficient to authenticate the arbitration agreement]; *Jazayeri v. Mao* (2009) 174 Cal.App.4th 301, 322 (*Jazayeri*); *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218 (*Condee*).)

First, Impact's reliance on *Condee* and *Espejo* is misplaced. Those cases addressed the less stringent evidentiary standards that apply to a petitioner's *initial* burden of producing prima facie evidence of a written agreement to arbitrate. (See *Espejo, supra*, 246 Cal.App.4th at pp. 1058–1059 [describing *Condee* and cases following it as analyzing the petitioner's "initial burden" to make a prima facie showing of an agreement to arbitrate].) As we discuss further below, the trial courts here based their decisions to deny Impact's motions on Impact's failure to meet its *ultimate* burden of proving a valid arbitration agreement, which requires *admissible* evidence. (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165–166 (*Gamboa*).)

Second, Impact's reliance on unpublished superior court decisions is improper under California Rules of Court, rule 8.1115(a). (*Foster v. Britton* (2015) 242 Cal.App.4th 920, 933, fn. 9; *Aguirre v. Amscan Holdings, Inc.* (2015) 234 Cal.App.4th 1290, 1298, fn. 5.) Unpublished superior court decisions "do not have precedential value" (*Pereira-Goodman v. Anderson* (1997) 54 Cal.App.4th 864, 872, fn. 5) and do not provide guidance to other

9

courts and litigants (*Neary v. Regents of University of California* (1992) 3 Cal.4th 273, 282). "Indeed, persistent use of unpublished authority may be cause for sanctions." (*People v. Williams* (2009) 176 Cal.App.4th 1521, 1529.) We therefore disregard those cases and caution Impact's counsel to comply with rule 8.1115(a) in the future.

Third, Impact fails to identify, let alone apply, the abuse of discretion standard in its arguments regarding the courts' evidentiary rulings. "Failure to acknowledge the proper scope of review is a concession of a lack of merit." (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 465; see also *Bates v. Rubio's Restaurants, Inc.* (2009) 179 Cal.App.4th 1125, 1135 [appellant who fails to address proper standard of review "fail[s] to meet its burden to show reversible error"].)

Regardless of these omissions, we conclude the trial courts did not abuse their discretion in sustaining plaintiffs' objections. Although Mullins's initial declarations stated that all facts set forth therein are within her personal knowledge, such "boilerplate" language "is not sufficient to establish personal knowledge." (*Gamboa, supra*, 72 Cal.App.5th at p. 169.) Personal knowledge means a present recollection of an impression derived from the exercise of the witness's own senses. (*People v. Valencia* (2021) 11 Cal.5th 818, 831, fn. 12.) Mullins did not explain in her declarations how she perceived the represented facts herself, and merely claiming to be "knowledgeable regarding the company's operations," "knowledgeable about the onboarding process," and stating her job title, are not sufficient by themselves to establish personal knowledge. (*Gamboa*, at p. 169.) This is especially true given that according to Mullins's own attestations, her responsibilities as Impact's workers' compensation claims coordinator have no apparent connection to Impact's onboarding process. Other than her

10

workers' compensation job title, she did not claim any personal involvement in personnel matters or drafting or approving the different versions of the arbitration agreements. Mullins's only claim to "personal" knowledge was that she had reviewed documents in plaintiffs' personnel files. Her initial declarations contain conclusory statements about how Impact conducts onboarding, but there was no explanation for *how* Mullins knew about or participated in the onboarding process, including how the Agreements were actually presented to plaintiffs for signature.

Mullins's supplemental declarations in Munoz's cases did little to bridge these gaps. Although she asserted in those declarations that she was "knowledgeable about the onboarding process for new and rehired employees" at Impact, Mullins failed to explain how she came to that knowledge. She referenced an "administrator" who "administer[s]" the onboarding paperwork, but did not identify who that is or why Mullins would have the personal knowledge to attest to the administrator's actions and processes. Her supplemental declaration also stated that it is Impact's "business practice to stamp a revision number on the entirety of the new hire packet each time the packet" is updated, but the declaration provides no context for how she would know that, or what role she played in that process, if any. Nor did her declaration explain how she would know that the onboarding documents had not been updated "since at least 2019." In these circumstances, we cannot conclude the courts below abused their discretion in deciding that Mullins lacked the personal knowledge necessary to authenticate the Agreements.

For similar reasons, we conclude the trial courts did not abuse their discretion in sustaining plaintiffs' hearsay and authentication objections to the alleged arbitration agreements. A business record which would otherwise constitute inadmissible hearsay is admissible to prove an act if: (1) the

11

writing was made in the regular course of the business; (2) the writing was made at or near the time of the act, condition, or event; (3) the custodian or other qualified witness testifies to the identity of the record and its mode of preparation; and (4) the sources of information on which the record is based and method and time of the record's preparation are such as to indicate the record's trustworthiness. (Evid. Code, § 1271; *Taggart v. Super Seer Corp.* (1995) 33 Cal.App.4th 1697, 1705–1706.) Mullins's declarations fell short of these requirements, in large part because they failed to establish she had any personal knowledge about how the onboarding process was actually conducted, let alone how and when the Agreements were written. As Judge Schneider observed in his written ruling, "there is no indication that the [Agreement] was made in the regular course of Impact's business" or "that the [Agreement] was made at or near the time of the act, condition, or event; nor does Mullins attest to the document's mode of preparation or how the onboarding process works."

Impact cites *Jazayeri*, a case in which the Court of Appeal held that a witness "need not have been present at every transaction to establish the business records exception; he or she need only be familiar with the procedures followed[.]" (*Jazayeri, supra*, 174 Cal.App.4th at p. 322.) But even though the business records witness in *Jazayeri* was not present for every transaction, the court observed she was present "on nearly every occasion" of the deliveries at issue in the case, she received the records related to those deliveries in due course from their sources, her testimony was supported by other testimony, and she was "clearly" familiar with the business's record-keeping procedures for the subject purchase orders. (*Id.* at pp. 308, 320–323.) The court held that "[t]he key to establishing the admissibility of a document made in the regular course of business is proof

12

that the person who wrote the information or provided it had knowledge of the facts from personal observation." (*Id.* at p. 322.) Here, as we have discussed, Mullins's declarations failed to show she had the requisite knowledge from personal observation to serve as a business records witness. Merely reading the personnel files is not sufficient to qualify them as business records.

Lastly, Impact contends the court erred in sustaining Munoz's objection to the lack of a certified translation of the Spanish version of the Agreement that Mullins attached to her first declaration. Impact's opening brief, however, cites *only* to unpublished superior court cases in support of its argument, which is improper for the reasons we have noted. Impact also makes no argument as to why the court abused its discretion in enforcing a court rule which requires that motion exhibits "written in a foreign language must be accompanied by an English translation, certified under oath by a qualified interpreter." (Rule 3.1110(g).) We therefore conclude that Impact has forfeited this argument by failing to support it with citation to proper authority. (See rule 8.204(a)(1)(B).)

Accordingly, we discern no grounds for reversing the trial courts' evidentiary rulings.

## II

We turn next to Impact's argument that plaintiffs failed to meet their burden of producing evidence to dispute the existence of the arbitration agreements, and that even if they had, Impact met its burden of showing a valid agreement to arbitrate exists.

"A trial court must grant a petition to compel arbitration only if it determines that an agreement to arbitrate the controversy exists." (*Brockman v. Kaiser Foundation Hospitals* (2025) 114 Cal.App.5th 569, 583

(*Brockman*).)  The trial court makes this determination using a summary procedure in which "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

"While public policy favors contractual arbitration of disputes, arbitration is a matter of contract and a party who has not agreed to arbitrate a controversy cannot be compelled to do so.  Thus, a court, before granting a petition to compel arbitration, must determine the factual issue of the existence or validity of the arbitration agreement.  An arbitration agreement is subject to the same rules of construction as any other contract." (*Brockman, supra*, 114 Cal.App.5th at pp. 584–585 [cleaned up].)

"Although the burden of persuasion is always on the moving party to prove the existence of a valid agreement to arbitrate the controversy, the burden of production may shift in a three-step process." (*Brockman, supra*, 114 Cal.App.5th at p. 586, citing *Gamboa, supra*, 72 Cal.App.5th at pp. 164–165.)  "First, the moving party bears the burden of producing prima facie evidence of a written agreement to arbitrate the controversy" by, for example, "attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature.  At this step, a movant need not follow the normal procedures of document authentication and need only allege the existence of an agreement and support the allegation[.]" (*Brockman*, at p. 586 [cleaned up].)

"If the moving party meets its initial prima facie burden and the opposing party disputes the agreement, then in the second step, the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement.  [Citation.]  The opposing party can do this in several ways.

14

For example, the opposing party may testify under oath or declare under penalty of perjury that the party never saw or does not remember seeing the agreement, or that the party never signed or does not remember signing the agreement." (*Gamboa, supra*, 72 Cal.App.5th at p. 165.)  "If the opposing party meets its burden of producing evidence, then in the third step, the moving party must establish with admissible evidence a valid arbitration agreement between the parties.  The burden of proving the agreement by a preponderance of the evidence remains with the moving party." (*Id.* at pp. 165–166.)

"When, as here, the court's order denying a motion to compel arbitration is based on the court's finding that the moving party failed to carry its burden of proof with respect to the ultimate question of whether an agreement to arbitrate exists, the question for the reviewing court is whether that finding is erroneous as a matter of law.  Specifically, the question becomes whether the appellant's evidence was (1) uncontradicted and unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.  Unless the trial court makes specific findings of fact in favor of the losing party, we presume the trial court found the party's evidence lacks sufficient weight and credibility to carry the burden of proof.  We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence.  The appellate court cannot substitute its factual determinations for those of the trial court; it must view all factual matters most favorably to the prevailing party and in support of the judgment.  All conflicts, therefore, must be resolved in favor of the respondent." (*Brockman, supra*, 114 Cal.App.5th at pp. 587–588 [cleaned up].)  We also indulge "all intendments and presumptions" to support the lower courts' orders on matters as to which the record is silent.  (*Jameson v.*

*Desta* (2018) 5 Cal.5th 594, 608–609.) It is Impact's burden to overcome the presumption of correctness by demonstrating, based on the record on appeal, error requiring reversal. (*Id.* at p. 609.) But it is "almost impossible" under this standard for a petitioner like Impact to prevail on appeal by arguing the evidence compels a ruling in its favor because we have no power to judge the credibility of witnesses or to reweigh the evidence. (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067, quoting *Patricia A. Murray Dental Corp. v. Dentsply Internat., Inc.* (2018) 19 Cal.App.5th 258, 270.)

Assuming without deciding that Impact produced prima facie evidence of written agreements to arbitrate, we conclude that plaintiffs met their burden of producing evidence to challenge the agreements' authenticity. Manriquez-Gonzales's declaration stated that he did not recognize, and had no recollection of receiving, either version of the Agreement. He also stated he did not believe he "actually received or signed" the arbitration documents. He attested that he "went through a quick onboarding process" where he was required to sign various documents, but he did not receive copies of any of them. These sworn statements, together with the discrepancies between the version numbers of the signature pages and other pages of the alleged agreements, were sufficient to shift the burden back to Impact to prove the existence of an agreement to arbitrate. (See *Gamboa, supra*, 72 Cal.App.5th at p. 165.)

Although Munoz stated in his declaration that he believed he signed the signature page attached to Mullins's declaration, he also expressed uncertainty about whether the Agreement was "part of the same document" as the signature page, given the different revision numbers. Plaintiffs pointed out that the "Rev." stamps on their signature pages did not match the number stamped onto both the English and Spanish versions of the

Agreement, which indicates they were separate documents. Unlike Manriquez-Gonzales, Munoz only signed the Spanish version of the signature page, and the Spanish version of the Agreement was properly ruled inadmissible. Moreover, as Judge Schneider observed in his written ruling in Munoz's class action case, differences in length, formatting, and numbering between the English and Spanish versions of the Agreement raised additional questions about their authenticity and reliability. Judge Scheider further noted that Mullins's declarations did not explain when the "20240319" stamp was placed on Munoz's new hire packet, or why the English and Spanish versions of the Agreement in Munoz's personnel file would have a revision stamp dated in 2024 if his onboarding paperwork was completed in 2022.

Because plaintiffs met their burden of producing evidence to challenge the authenticity of the Agreement, the burden properly shifted back to Impact to establish a valid arbitration agreement with admissible evidence by a preponderance of the evidence. (*Gamboa, supra*, 72 Cal.App.5th at pp. 165–166.) Given that we have concluded the trial courts did not err in sustaining plaintiffs' objections to the alleged arbitration agreements themselves, Impact cannot meet its burden because there was no admissible evidence of any agreement whatsoever. But even if the bodies of these documents were admissible, given the inconsistencies and omissions in Impact's evidence and our limited function in reviewing the trial court's findings, we would still discern no grounds for reversal. Most of Mullins's statements were inadmissible for reasons we have explained, including her conclusory assertions that the Agreement and signature pages "both belong to the same version of the document, despite the different revision numbers." Without any admissible explanation for these discrepancies, the trial courts

17

reasonably concluded that Impact's evidence did not have sufficient weight or credibility to carry its burden of proving the existence of an arbitration agreement. The courts were also entitled to accept the credibility of the plaintiffs' own declarations. We will not reweigh the evidence or the courts' credibility determinations and cannot reject their findings as a matter of law unless Impact's evidence was unimpeached, uncontradicted, and "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support [the] finding[s]." (*Brockman, supra*, 114 Cal.App.5th at p. 587.) Because Impact has not shown those conditions exist here, we affirm. We therefore need not and do not address Impact's arguments regarding federal arbitration law.

DISPOSITION

The orders of the trial courts denying Impact's motions to compel arbitration are affirmed. Plaintiffs are entitled to recover their costs on appeal.

BUCHANAN, J.

WE CONCUR:

O'ROURKE, Acting P. J.

DO, J.

18